**Affirmed and Opinion filed November 18, 2014.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-13-00778-CV

---

**TAMMY DEWOLF, INDIVIDUALLY AND AS PERSONAL REPRESENTATIVE OF THE ESTATE OF TERRY SEAN DEWOLF AND AS NEXT FRIEND OF CHRISTINA DEWOLF, AMANDA DEWOLF, AND KAITLYN DEWOLF, Appellant**

**V.**

**RICHIE KOHLER, OCEANIC VENTURES, INC., M/V JOHN JACK, A&E TELEVISION NETWORKS, ITI HOLDINGS, INC., AND LAMARTEK, INC. D/B/A DIVE RITE, Appellees**

---

**On Appeal from the 165th District Court
Harris County, Texas
Trial Court Cause No. 2010-46416**

---

### O P I N I O N

After the jury failed to find that anyone caused her husband's death, plaintiff Tammy DeWolf brought this appeal, alleging a variety of errors in the trial court's interlocutory rulings and its conduct of the trial. On this record, we conclude that

the trial court did not reversibly err in

- dismissing the claims against a vessel for lack of subject-matter jurisdiction;

- dismissing a nonresident television network for lack of personal jurisdiction;

- granting a dive-training company summary judgment on grounds that were not challenged on appeal;

- granting a scuba-equipment manufacturer summary judgment on limitations grounds where the manufacturer established, as a matter of law, that the plaintiff was not diligent in investigating and pursuing her potential claim;

- refusing to instruct the jury on the elements of a voluntary-undertaking claim;

- refusing to instruct the jury to disregard certain testimony;

- including in the charge a question concerning allocation of responsibility;

- making an ambiguous statement that has not been shown to be a comment on the weight of the evidence and was not the subject of an objection; or

- admitting testimony that has not been identified in this appeal.

We also conclude that the plaintiff's appellate complaints of improper jury argument were not preserved for our review. Finally, we do not address her appellate arguments about the legal effect of a release; because no one was found to be at fault, a release of liability does not affect the outcome of the case. We accordingly affirm the trial court's judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In the summer of 2008, Terry Sean DeWolf was one of a group of people scuba diving at the shipwreck of the *Andrea Doria*, which rests on the ocean floor

2

more than fifty miles from the shore of Nantucket, Massachusetts. He successfully completed the first day of diving. On the morning of July 30, 2008, the second day of the trip, Terry was seen entering the water, but he did not resurface when expected. After hours of searching, his body was located on, and recovered from, the ocean floor. In a draft autopsy report dated August 1, 2008, the local medical examiner tentatively identified the cause of death as drowning. The statement was qualified with the notation "PFS" for "pending further study." After tissue samples of Terry's heart were reviewed, the cause of death was revised to reflect that Terry died of natural causes, namely, myocarditis.

In July 2010, Terry's wife Tammy filed suit in a Harris County district court on behalf of herself, Terry's estate, and Terry's three children, each of whom asserted claims arising from Terry's death. She amended her petition several times to assert claims against the following defendants, among others:

- M/V *John Jack*, the boat from which Terry was conducting his dive;

- Richie Kohler, the individual who chartered the *John Jack* on behalf of the participants in the dive expedition;

- A&E Television Networks ("A&E"), a non-resident television network that carried the History Channel, on which Terry had watched a program called *Deep Sea Detectives* on which Kohler appeared;

- ITI Holdings, Inc. ("ITI"), a dive-training company from which Kohler obtained credentials as a scuba-diving instructor;[1] and

- Lamartek, a scuba-equipment manufacturer that does business under the

---

[1] Tammy variously refers to the company as ITI Holdings, Inc., Scuba Diving International Group, SDI, or SDI/TDI.

3

name "Dive Rite" or "DiveRite"[2] and manufactured Terry's rebreather.[3]

For the reasons set forth below, Tammy did not prevail in her claims against any of these defendants.

## A. M/V *John Jack*

The M/V *John Jack* did not answer the suit, and when Tammy moved for a default judgment, the trial court dismissed the vessel sua sponte for lack of jurisdiction. The trial court denied Tammy's motion for reconsideration and her motion to sever the claims against the vessel to allow an earlier appeal.

## B. A&E Television Networks

A&E filed a special appearance contesting the trial court's exercise of personal jurisdiction. The trial court granted the special appearance, and Tammy did not pursue an interlocutory appeal of that ruling. After the deadline to file an interlocutory appeal had passed, Tammy filed a motion for reconsideration, which the trial court denied. Shortly before trial two years later, Tammy again moved unsuccessfully for reconsideration.

## C. ITI Holdings, Inc.

ITI filed a combined motion for traditional and no-evidence summary judgment on Tammy's claims under the Texas Deceptive Trade Practices–Consumer Protection Act ("DTPA") and the federal Death on the High Seas Act.[4]

---

[2] Both spellings are used in Tammy's pleadings.

[3] Additional defendants named in Tammy's earlier pleadings were dropped when she amended her pleadings. Oceanic Ventures, Inc., a Houston dealer that sells Lamartek's scuba equipment, also was named in Tammy's live pleadings, but is not mentioned in the jury charge or the judgment, and Tammy represents that she settled her claims against this defendant and an individual employed by it.

[4] *See* TEX. BUS. & COM. CODE ANN. § 17.41–.63 (West 2011 & Supp. 2014) (DTPA); 46 U.S.C. §§ 30301–30308 (2013) (Death on the High Seas Act). Tammy states in her brief that the

4

The trial court granted the motion without stating the grounds.[5]

## D. Lamartek, Inc.

Lamartek filed a combined motion for traditional and no-evidence summary judgment in which it addressed Tammy's claim under the Death on the High Seas Act and many of her state-law claims. In her response, Tammy discussed her DTPA claim as if she had expressly asserted such a claim against Lamartek. Lamartek stated in its summary-judgment reply that Tammy had not alleged a DTPA cause of action against it, but it nevertheless addressed the claim.

The trial court initially denied the summary-judgment motion. Lamartek filed two motions for reconsideration—first on the ground of limitations, and then on both limitations and causation grounds, expressly incorporating all of the arguments raised and evidence produced on these topics in its summary-judgment motion, its summary-judgment reply, its first motion for reconsideration, and its reply to Tammy's response to that motion. The trial court then signed an order granting the motion for reconsideration on limitations grounds.

## E. Kohler

The case proceeded to a jury trial against Kohler. The jury was asked if "a wrongful act, neglect or default of a vessel or a person proximately caused" Terry's death, and jurors unanimously answered, "No." In answer to a separate question, the jury also found that Terry "expressly assumed the risk of injury or

trial court dismissed all of her claims against ITI, Lamartek, and Kohler except for these two causes of action, and that no issues regarding the other claims are before us.

[5] After ITI filed its summary-judgment motion but before the trial court signed the order granting it, ITI filed a motion for reconsideration in which it stated, "The Court apparently denied [the summary-judgment] motion on July 16, 2012 but has not issued a written order denying summary judgment." The basis for this statement is not known, and in any event, ITI incorporated into its motion for reconsideration all of the arguments made in, and evidence attached to, its summary-judgment motion and reply.

death" in diving at the wreck of the *Andrea Doria*. The trial court incorporated both findings into the final judgment.

Tammy appeals the judgment as to each of these five defendants. She did not include a statement of issues in her brief, but instead summarized her argument under eight headings with multiple subheadings. We first address her arguments directed to the jurisdictional rulings, then her arguments concerning the summary judgments, and finally, her arguments directed to events that occurred during the jury trial.

## II. JURISDICTIONAL RULINGS

### A. The trial court did not err in dismissing the claims against the M/V *John Jack*.

Tammy asserts that the trial court erred in dismissing the M/V *John Jack* because a court can acquire personal jurisdiction over a vessel even if it is not in Texas waters; however, the vessel did not file a special appearance contesting personal jurisdiction. *See* TEX. R. CIV. P. 120a. Because the trial court acted sua sponte, it instead appears that it dismissed the vessel for lack of subject-matter jurisdiction.

A court is obliged to determine whether it has subject-matter jurisdiction and must consider the question sua sponte even if it is not challenged by a party. *See Univ. of Tex. Sw. Med. Ctr. at Dall. v. Loutzenhiser*, 140 S.W.3d 351, 358 (Tex. 2004), *superseded by statute on other grounds*, Act of May 25, 2005, 79th Leg., R.S., ch. 1150, § 1, 2005 TEX. GEN. LAWS 3783, 3783 (current version at TEX. GOV'T CODE ANN. § 311.034 (West 2013)), *as recognized in Prairie View A&M Univ. v. Chatha*, 381 S.W.3d 500, 511 (Tex. 2012); *Gantt v. Gantt*, 208 S.W.3d 27, 30 (Tex. App.—Houston [14th Dist.] 2006, pet. denied). This principal is reflected in the order dismissing the vessel. There, the trial court wrote, "this Court lacks

6

jurisdiction over said Defendant and over claims related to said Defendant. If it becomes apparent to a Court that it has no authority under the law to adjudicate the issues presented, it becomes its duty to dismiss it."

Although Tammy does not specifically address subject-matter jurisdiction in her brief, we note that the trial court's ruling was correct. It is well-established that "[a]n *in rem* suit against a vessel is . . . distinctively an admiralty proceeding, and is hence within the exclusive province of the federal courts." *Am. Dredging Co. v. Miller*, 510 U.S. 443, 446–47, 114 S. Ct. 981, 985, 127 L. Ed. 2d 285 (1994) (citing *The Moses Taylor*, 71 U.S. 411, 4 Wall. 411, 431, 18 L. Ed. 397 (1867)); *cf. Stier v. Reading & Bates Corp.*, 992 S.W.2d 423, 428–29 (Tex. 1999) (distinguishing claims asserted *in rem* from those asserted *in personam*, and noting that "state and federal courts have concurrent jurisdiction over *in personam* maritime causes of action"); *Exxon Corp. v. Choo*, 881 S.W.2d 301, 304 (Tex. 1994) (same). Thus, if the trial court had not dismissed the case against the vessel, we would have been obliged to do so. We accordingly overrule this issue.

**B.      The trial court did not err in granting A&E's special appearance.**

Unlike the M/V *John Jack*, A&E did file a special appearance contesting the trial court's exercise of personal jurisdiction. Before addressing the merits of the trial court's order granting A&E's special appearance, we must address A&E's argument that we lack jurisdiction over the appeal of that ruling.

> ### *1.      Tammy did not waive appellate review by failing to pursue an interlocutory appeal.*

Normally, an appeal will lie only from a final judgment. *See LTTS Charter School, Inc. v. C2 Constr., Inc.*, 342 S.W.3d 73, 76 (Tex. 2011). By statute, however, a litigant "may appeal from an interlocutory order of a district court . . . that . . . grants or denies the special appearance of a defendant . . . ."

7

TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(7) (West 2008 & Supp. 2014). A&E argues that if Tammy wished to appeal the order granting A&E's special appearance, she was required to do so through a timely interlocutory appeal, and that this court lacks jurisdiction to consider the issue as part of Tammy's appeal from the final judgment.

A&E correctly points out that there is a split of authority among the lower courts on the issue. *See, e.g.*, *GJP, Inc. v. Ghosh*, 251 S.W.3d 854, 866–67 (Tex. App.—Austin 2008, no pet.) (holding that appellate jurisdiction to review special-appearance rulings is not limited solely to interlocutory appeals); *Canyon (Austl.) Pty., Ltd. v. Maersk Contractors, Pty., Ltd.*, No. 08-00-00248-CV, 2002 WL 997738, at *4 (Tex. App.—El Paso May 16, 2002, pet. denied) (not designated for publication) (concluding that an interlocutory appeal was not "mandatory" and the trial court's order granting a special appearance could be reviewed on appeal from the final judgment); *see also Hernandez v. Ebrom*, 289 S.W.3d 316, 327 (Tex. 2009) (Jefferson, C.J., dissenting) (pointing out that these cases reflect the "prevailing view . . . that an order granting or denying a special appearance may be challenged after final judgment"). *But see Matis v. Golden*, 228 S.W.3d 301, 305 (Tex. App.—Waco 2007, no pet.) (concluding that a challenge to the trial court's order denying the defendant's special appearance, raised for the first time on appeal from final judgment, was untimely).

Applying the reasoning employed by the Texas Supreme Court in *Hernandez v. Ebrom* in construing a different subsection of the same statute, we conclude that under the facts of this case, Tammy has not waived appellate review of the special-appearance order. In *Hernandez*, a defendant physician in a health-care-liability case argued that the plaintiff's expert report was deficient and moved to dismiss the plaintiff's suit and recover attorney's fees. *Hernandez*, 289 S.W.3d

8

at 317. The trial court denied the motion, and the defendant was entitled to bring an immediate appeal of the interlocutory order, but did not do so. *Id.* at 317–18 (citing TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(9)). The plaintiff argued that because the defendant did not seek review until after a final judgment was rendered dismissing the case with prejudice, the defendant waived the right to challenge the trial court's order. *Id.* at 318. The defendant responded "that because the plain language of the statute says an interlocutory appeal 'may' be taken from an order denying a challenge to an expert report, an interlocutory appeal is permitted but not mandated." *Id.* (citing TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)). The Texas Supreme Court agreed with the defendant, explaining that "[t]he statutes authorizing the defendant's objection and appeal do not impose consequences if an interlocutory appeal is not pursued" and "[t]he statute providing for interlocutory appeals states only that '[a] person may appeal from' certain specified interlocutory orders." *Id.* at 317, 319.[6]

The same is true here. Texas Rule of Civil Procedure 120a authorizes any party to file a special appearance to object to the trial court's exercise of jurisdiction over a defendant's person or property, and Texas Civil Practice and Remedies Code section 51.014(a)(7) provides that a person "may" appeal the interlocutory order granting or denying the special appearance. Neither provision imposes any penalty for the failure to pursue an interlocutory appeal. We therefore conclude that Tammy did not waive her complaint regarding the special-appearance ruling by failing to pursue an interlocutory appeal, and Tammy's timely appeal from the final judgment gives us appellate jurisdiction to consider the merits of that complaint.

---

[6] Although the court also noted that "[a]ppeals of some interlocutory orders become moot because the orders have been rendered moot by subsequent orders," *id.* at 319, the trial court's order granting A&E's special appearance is not moot, nor does anyone argue to the contrary.

9

## 2. *The trial court lacked personal jurisdiction over A&E.*

The Texas Supreme Court has interpreted the broad language of the Texas long-arm statute to extend Texas courts' exercise of personal jurisdiction "'as far as the federal constitutional requirements of due process will permit.'" *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002) (quoting *U–Anchor Adver., Inc. v. Burt*, 553 S.W.2d 760, 762 (Tex. 1977)). Those requirements are fulfilled if the defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 158, 90 L. Ed. 95 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S. Ct. 339, 343, 85 L. Ed. 278 (1940)). Minimum contacts are sufficient to support the exercise of personal jurisdiction if they show that the nonresident defendant has purposefully availed itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. *See id.* at 319, 66 S. Ct. at 160; *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 784 (Tex. 2005).

Personal jurisdiction may be "general" or "specific." *Zinc Nacional, S.A. v. Bouche Trucking, Inc.*, 308 S.W.3d 395, 397 (Tex. 2010). A trial court properly may exercise general jurisdiction over a defendant whose contacts with the forum state have been continuous and systematic. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 575 (Tex. 2007); *BMC Software*, 83 S.W.3d at 796. On the other hand, when there is a substantial connection between the defendant's purposeful contacts with Texas and the operative facts of the litigation, a trial court properly may exercise specific jurisdiction over the defendant even if the defendant has not had continuous, systematic contact with the state. *See Moki Mac,* 221 S.W.3d at 585.

10

To defeat the trial court's exercise of personal jurisdiction, the nonresident defendant must negate all jurisdictional bases alleged. *BMC Software*, 83 S.W.3d at 793; *Nat'l Indus. Sand Ass'n v. Gibson,* 897 S.W.2d 769, 772 (Tex. 1995). Thus, the plaintiff has the initial burden of pleading sufficient facts to bring the nonresident defendant within the provisions of the Texas long-arm statute. *BMC Software*, 83 S.W.3d at 793; *Brocail v. Anderson*, 132 S.W.3d 552, 556 (Tex. App.—Houston [14th Dist.] 2004, pet. denied). If the plaintiff fails to do so, then proof of the defendant's nonresidency is sufficient to negate personal jurisdiction. *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 658–59 (Tex. 2010). If the plaintiff does allege sufficient jurisdictional facts, then the defendant may defeat jurisdiction in several ways. The defendant may introduce evidence contradicting the plaintiff's factual allegations,[7] or show that the defendant's contacts with the forum state "fall short of purposeful availment,"[8] or demonstrate that "traditional notions of fair play and substantial justice are offended by the exercise of jurisdiction."[9] If specific jurisdiction is at issue, then the defendant also may show that the plaintiff's claims do not arise from the defendant's contacts with Texas.[10]

Whether a trial court has personal jurisdiction over a defendant is a question of law we review de novo. *Moki Mac*, 221 S.W.3d at 574; *BMC Software*, 83 S.W.3d at 794. When, as here, the trial court issues findings of fact and conclusions of law in connection with its special-appearance ruling, the defendant may challenge the trial court's factual findings for legal and factual sufficiency.

---

[7] *See Parker v. Robert Ryan Realtors, Inc.*, No. 14-10-00325-CV, 2010 WL 4226550, at *3 (Tex. App.—Houston [14th Dist.] Oct. 26, 2010, no pet.) (mem. op.) ("[B]oth parties can present evidence either proving or disproving the allegations." (citing *Kelly*, 301 S.W.3d at 659)).

[8] *Kelly*, 301 S.W.3d at 659.

[9] *Id.*

[10] *Id.*

*BMC Software,* 83 S.W.3d at 794.

Tammy's only jurisdictional allegation about A&E is that it is a nonresident "television network which broadcasts into the [S]tate of Texas." A&E challenged this allegation in its special appearance and offered evidence about the insufficiency of its contacts with Texas. In response, Tammy offered only her own affidavit that (a) she and Terry "first learned of Richie Kohler" from watching A&E's show *Deep Sea Detective* at their home in Houston; (b) Terry would not have heard of Kohler if Kohler had not been on the show; and (c) based on the show, she thought Kohler was highly qualified.

Based on the evidence, the trial court made factual findings that included the following:

- A&E is not a resident of Texas;

- It is a general partnership organized under the laws of Delaware and having its principal office in New York;

- It does not have offices, employees, equipment, software, or a registered agent in Texas;

- It has no physical presence in Texas;

- It does not host or offer scuba-diving trips or manage scuba operations;

- It was unaware of, and unconnected with, the scuba-diving trip on which Terry died;

- A&E has never engaged in contact with Terry or Tammy DeWolf;

- It did not introduce Kohler and Terry DeWolf or facilitate a relationship between them, and it has no involvement in or knowledge about their association;

12

- It does not direct its television-network signals into Texas, but uplinks its signals to satellites and authorizes third-party distributors to distribute those signals to cable-television subscribers throughout the United States.

On appeal, Tammy does not challenge or even mention any of the trial court's factual findings. Instead, she briefly discusses two cases—one Texas case concerning specific jurisdiction, and one federal case dealing with general jurisdiction. Neither case is binding on this court, and both cases are distinguishable.

Citing a case dealing with specific jurisdiction, Tammy asserts that the Thirteenth Court of Appeals "determined that broadcasting in Texas established minimum contacts." In support of this statement, she provides a lengthy quote from *TV Azteca v. de los Angeles Trevino Ruiz*, No. 13-12-00536-CV, 2014 WL 346031 (Tex. App.—Corpus Christi Jan. 30, 2014, pet. filed) (mem. op.). We need not determine whether we would reach a similar result if presented with claims and facts such as those presented in *TV Azteca*, because that case bears little resemblance to the one before us. *TV Azteca* is a defamation case, and the authoring court expressly relied on the legal principle that the tort "'is generally held to occur wherever the offending material is circulated.'" *Id.*, 2014 WL 346031, at *4 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 777, 104 S. Ct. 1473, 1479, 79 L. Ed. 2d 790 (1983)). That legal principle does not apply to this wrongful-death case. Indeed, Tammy did not even allege that A&E committed a tort in Texas. Moreover, the trial court found—and Tammy does not dispute—that A&E does not direct its television-network signals into Texas. Additionally, the trial court correctly concluded that none of Tammy's causes of action asserted against A&E arise from or relate to any of A&E's activities purposefully directed to this forum.

13

In what appears to be an alternative argument, Tammy asserts that "because plaintiff's action arises under federal admiralty law, [she] need not prove minimum contacts with the [S]tate of Texas, but only with the United States as a whole." Although this assertion appears to be directed to specific jurisdiction, she relies exclusively on *System Pipe & Supply, Inc. v. M/V VIKTOR KURNATOVSKIY*, 242 F.3d 322 (5th Cir. 2001)—a case dealing with general jurisdiction. There, the authoring court wrote,

> This court has held that Federal Rule of Civil Procedure 4(k)(2) allows personal jurisdiction over foreign defendants for claims arising under Federal law when the defendant has sufficient contacts with the nation as a whole, despite lacking sufficient contacts to satisfy the due process concerns of the long arm statute of a particular state.

*Id.* at 324 n.5. Federal Rule of Civil Procedure 4(k)(2)—which, tellingly, is entitled "Federal Claim Outside State-Court Jurisdiction"—provides that a defendant that "is not subject to jurisdiction in *any* state's courts of general jurisdiction" can be subject to a federal district court's personal jurisdiction if the claim arises under federal law.[11] Thus, disregarding the undisputed fact that A&E is not a foreign defendant, and setting aside the problem that by their terms, federal rules of civil procedure apply in federal district courts and state rules of civil procedure apply in state district courts,[12] we still would be left with the insurmountable hurdle that personal jurisdiction in a Texas district court and personal jurisdiction under Federal Rule of Civil Procedure 4(k)(2) are, by definition, mutually exclusive. To argue that the state court erred in concluding that it lacked personal jurisdiction is to concede that the federal rule does not

---

[11] Emphasis added.

[12] *Compare* FED. R. CIV. P. 1 ("These rules govern the procedure in all civil actions and proceedings in the United States district courts . . . .") *with* TEX. R. CIV. P. 2 ("These rules shall govern the procedure in the justice, county, and district courts of the State of Texas in all actions of a civil nature . . . .").

apply.

In sum, we conclude that the trial court did not err in granting A&E's special appearance, and we overrule this issue.

### III. SUMMARY JUDGMENTS

ITI and Lamartek each filed a combined motion for both no-evidence and traditional summary judgment. The standards of review for each are well established.

In a no-evidence motion for summary judgment, the movant represents that there is no evidence of one or more essential elements of the claims for which the nonmovant bears the burden of proof at trial. TEX. R. CIV. P. 166a(i); *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009). The burden then shifts to the nonmovant to present evidence raising a genuine issue of material fact as to the elements specified in the motion. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). We review the trial court's grant of summary judgment de novo. *Ferguson v. Bldg. Materials Corp. of Am.*, 295 S.W.3d 642, 644 (Tex. 2009) (per curiam) (citing *Tex. Mun. Power Agency v. Pub. Util. Comm'n of Tex.*, 253 S.W.3d 184, 192 (Tex. 2007)). We sustain a no-evidence summary judgment when (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact. *City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005).

A movant for traditional summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors,*

*Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). If the movant initially establishes a right to summary judgment on the issues expressly presented in the motion, then the burden shifts to the nonmovant to present to the trial court any issues or evidence that would preclude summary judgment. *See City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678–79 (Tex. 1979). We consider all the evidence in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if a reasonable factfinder could, and disregarding contrary evidence unless a reasonable factfinder could not. *See Mack Trucks, Inc.*, 206 S.W.3d at 582. On appeal, the movant for traditional summary judgment still bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See Rhône-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999).

## A. The trial court did not err in granting ITI's summary-judgment motion.

### 1. *Death on the High Seas Act*

If a party moves for summary judgment on multiple grounds and the trial court does not specify the grounds on which it granted the motion, we will uphold the ruling unless the appellant negates every ground on which the judgment could have been granted. *See Wohlstein v. Aliezer*, 321 S.W.3d 765, 772 (Tex. App.—Houston [14th Dist.] 2010, no pet.); *Marsh v. Livington*, No. 14-09-00011-CV, 2010 WL 1609215, at *3 (Tex. App.—Houston [14th Dist.] Apr. 22, 2010, pet. denied) (mem. op.). Regarding Tammy's claim under the Death on the High Seas Act, ITI sought no-evidence summary judgment on the ground that there was no evidence of causation. It sought traditional summary judgment on this claim on the grounds that it owed no duty to Terry and did not cause his death.

In her appellate brief, Tammy does not challenge the summary judgment on

16

this claim on any grounds.[13] We accordingly overrule this issue and affirm the summary judgment in ITI's favor as to this claim. *See Wohlstein*, 321 S.W.3d at 772.

### 2. *DTPA*

Regarding Tammy's DTPA claim, ITI moved for no-evidence summary judgment on the grounds that there was no evidence that (a) the DeWolfs sought to acquire goods or services from ITI; (b) ITI committed any false, misleading, or deceptive act or practice; (c) Terry DeWolf relied on any false, misleading, or deceptive actions by ITI; and (d) ITI made any express or implied warranties applicable to the dive trip that Terry DeWolf purchased from Kohler. ITI moved for traditional summary judgment on the DTPA claim on the grounds that (a) the claim is time-barred, (b) ITI did not engage in an act or practice that was the producing cause of Terry's death, and (c) no implied warranty from ITI applies to the claims against it.

In her appellate brief, Tammy discusses the standard of review applicable to a traditional motion for summary judgment, but does not mention that ITI also sought summary judgment on no-evidence grounds. She then challenges the summary judgment on her DTPA claim on only two grounds.[14] First, she argues

---

[13] In her appellate reply brief, Tammy argues for the first time that the summary judgment in ITI's favor must be reversed because some evidence was presented at trial that ITI contributed to Terry's death; however, we are not required to consider issues raised for the first time in a reply brief. *Salas v. LNV Corp.*, 409 S.W.3d 209, 219 n.6 (Tex. App.—Houston [14th Dist.] 2013, no pet.); *see also* TEX. R. CIV. P. 166a(i) ("The court *must* grant the motion [for no-evidence summary judgment] unless the respondent produces summary judgment evidence raising a genuine issue of material fact.") (emphasis added); *Young v. Leach*, No. 14-03-00071-CV, 2004 WL 1925967, at *5 (Tex. App.—Houston [14th Dist.] Aug. 31, 2004, pet. denied) (mem. op.) (where appellant challenged the trial court's grant of no-evidence summary judgment as to one party's claim, appellate court refused to consider evidence presented on that issue in the subsequent trial on another party's claims, explaining that the evidence was not before the trial court when it ruled on the summary-judgment motion).

[14] She additionally argues in her appellate reply brief that Terry was the intended

17

that Kohler would not have been able to charter a boat if ITI had not fraudulently issued his credentials qualifying him as an instructor. Because Tammy did not raise this argument and offer evidence supporting it in response to ITI's summary-judgment motion, we cannot reverse on this basis. *See* TEX. R. CIV. P. 166a(c), (i). Second, she argues that the Death on the High Seas Act does not preempt her claim under the Texas DTPA. Preemption, however, was not one of the grounds on which ITI sought summary judgment.

Because Tammy does not challenge all of the independent grounds on which summary judgment on this claim may have been granted, we overrule this issue and affirm the summary judgment in ITI's favor on this claim. *See Navarro v. Grant Thornton, LLP*, 316 S.W.3d 715, 719–20 (Tex. App.—Houston [14th Dist.] 2010, no pet.).

## B. The trial court did not err in granting Lamartek's motion for summary judgment on limitations grounds.

After initially denying Lamartek's summary-judgment motion, the trial court granted its motion for reconsideration and granted summary judgment on limitations grounds. A defendant that moves for summary judgment on the affirmative defense of limitations has the burden to conclusively establish that defense. *See Rhône-Poulenc, Inc.*, 997 S.W.2d at 223. The defendant also "must negate the discovery rule, if it applies and has been pleaded or otherwise raised, by proving as a matter of law that there is no genuine issue of material fact about when the plaintiff discovered, or in the exercise of reasonable diligence should have discovered the nature of its injury." *KPMG Peat Marwick v. Harrison Cnty. Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999) (footnotes omitted).

beneficiary of the training services that ITI rendered to Kohler and that Kohler testified at trial that a diver's certification cards are important to a dive-boat captain. But as previously explained, we do not consider grounds for reversal raised for the first time in an appellant's reply brief.

18

A claim under the Death on the High Seas Act is subject to a three-year limitations period,[15] and a DTPA claim is subject to a two-year limitations period.[16]  Although Tammy sued other defendants just before the second anniversary of Terry's death, she did not amend her petition to assert claims against Lamartek until three years and eight months after his death.[17]  Thus, unless her claim against Lamartek under the Death on the High Seas Act accrued on or after March 29, 2009, the claim is time-barred.  Her claim under the DTPA is time-barred unless it accrued on or after March 29, 2010.  The parties' limitations arguments therefore focus on the date on which Tammy's claims against Lamartek accrued.

### 1.    *Death on the High Seas Act*

A cause of action under the Death on the High Seas Act generally accrues on the date of death.  *See, e.g.*, *Phillips v. Heine*, 984 F.2d 489, 490–91 (D.C. Cir. 1993) (holding that if the date of death is not disputed, then "the cause of action accrued, and the statute of limitations began to run, on that date"); *Hassanati v. Int'l Lease Fin. Corp.*, No. CV 11-02251 MMM (MANx), 2014 WL 5032354, at *5 (C.D. Cal. Feb. 18, 2014) ("DOHSA claims must be brought within three years of a decedent's death."); *Moyer v. Rederi*, 645 F. Supp. 620, 627 (S.D. Fla. 1986) ("[A]uthority is clear that a cause of action under DOHSA accrues at the time and place where an allegedly wrongful act or omission 'was consummated' in an actual

---

[15] *See* 46 U.S.C. § 30106 (2013).

[16] TEX. BUS. & COM. CODE ANN. § 17.565.

[17] Filing suit against one group of defendants does not toll limitations against a different, unrelated defendant that is later added to the suit through an amended petition.  *See Alexander v. Turtur & Assocs., Inc.*, 146 S.W.3d 113, 121 (Tex. 2004); *Cooke v. Maxam Tool & Supply, Inc.*, 854 S.W.2d 136, 140 (Tex. App.—Houston [14th Dist.] 1993, writ denied); *see also Leeds v. Cooley*, 702 S.W.2d 213, 215 (Tex. App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.) ("The statute of limitations is tolled at the time a party defendant is brought into the suit and not when an original pleading is filed.").

injury . . . ." (quoting *Chute v. United States*, 466 F. Supp. 61, 64 (D. Mass. 1978))); *see also Reading Co. v. Koons*, 271 U.S. 58, 64, 46 S. Ct. 405, 407, 70 L. Ed. 835 (1926) (construing the analogous FELA statute of limitations, and holding that the limitations period runs from "the definitely ascertained time of death"). Neither we nor the parties have identified authority specifically holding that the discovery rule does or does not apply to delay accrual of a claim under the Death on the High Seas Act where, as Tammy maintains, the plaintiff knew the date of death but not its cause.

In arguing that the discovery rule does not apply, Lamartek relies heavily on Texas Civil Practice and Remedies Code section 16.003(b) and cases construing it. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.003(b) (West 2002 & Supp. 2014) ("A person must bring suit not later than two years after the day the cause of action accrues in an action for injury resulting in death. The cause of action accrues on the death of the injured person."). For two reasons, Lamartek's reliance on this statute and the cases construing it do not support its limitations argument. First, claims under the Death on the High Seas Act are governed by the federal statute of limitations for maritime torts, not by section 16.003(b) or the cases construing the state statute. *See Mink v. Genmar Indus., Inc.*, 29 F.3d 1543, 1547–49 (11th Cir. 1994); *Anderson v. Diamond M-Odeco, Inc.*, 912 S.W.2d 371, 372 (Tex. App.— Houston [14th Dist.] 1995, writ dism'd by agr.). Second, even where a claim is governed by a state statute, Texas courts repeatedly have applied the discovery rule to statutes of limitations that do not specify when a cause of action accrues. *See Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 351–52 (Tex. 1990) (collecting cases). As the Texas Supreme Court explained, the discovery rule does not apply to the Texas statute of limitations governing wrongful-death claims under state law, because in that statute, the legislature expressly stated that "[t]he cause of

20

action accrues on the death of the injured person." *Id.* at 350–52. But unlike the state statute cited by Lamartek, the federal statute of limitations provides only that a claim must be brought within three years "after the cause of action arose." *See* 46 U.S.C. § 30106.

Tammy argues that a claim governed by the federal statute of limitations does not accrue until the plaintiff knew or should have known of "the injury and its cause," but the only case that she cites on the issue is not a wrongful-death case. *See White v. Mercury Marine, Div. of Brunswick, Inc.*, 129 F.3d 1428, 1435 (11th Cir. 1997) (refusing to apply the discovery rule to a maritime worker's claim against a manufacturer of marine engines for hearing loss he suffered in the course of three decades of occupational exposure). The *White* court discussed the Supreme Court's precedents applying the discovery rule to claims of latent disease and medical malpractice. *See id.* at 1432 (citing *Urie v. Thompson*, 337 U.S. 163, 69 S. Ct. 1018, 93 L. Ed. 1282 (1949) (a silicosis claim brought under the Federal Employers' Liability Act) and *United States v. Kubrick*, 444 U.S. 111, 100 S. Ct. 352, 62 L. Ed. 2d 259 (1979) (a medical-malpractice claim brought under the Federal Tort Claims Act)). It is uncertain whether the Court would extend the discovery rule to a claim under the Death on the High Seas Act—especially where, as here, the date of death was never uncertain, and the plaintiff contends that the death was caused by an accident rather than a progressive illness or latent injury. *See Rotella v. Wood*, 528 U.S. 549, 555, 120 S. Ct. 1075, 1081, 145 L. Ed. 2d 1047 (2000) ("[I]n applying a discovery accrual rule, we have been at pains to explain that discovery of the injury, not discovery of the other elements of a claim, is what starts the clock."); *see also Albertson v. T.J. Stevenson & Co.*, 749 F.2d 223, 229 (5th Cir. 1984) (distinguishing cases of latent injury to which the discovery rule applies, and explaining that the time-of-event rule applies if "some injury is

21

discernible"). While acknowledging that federal district and intermediate courts "generally apply a discovery accrual rule when a statute is silent on the issue," the Court pointed out that it has not adopted that position, and instead has "recognized a prevailing discovery rule" only in the contexts of latent disease and medical malpractice. *See TRW Inc. v. Andrews*, 534 U.S. 19, 27, 122 S. Ct. 441, 447, 151 L. Ed. 2d 339 (2001) (quoting *Rotella*, 528 U.S. at 555, 120 S. Ct. at 1081).

We need not decide whether the discovery rule Tammy cites could apply to a claim under the Death on the High Seas Act where the date of death is known but the plaintiff alleges that she did not discover the cause of death until a later date. Assuming, without deciding, that the discovery rule is available under such circumstances, it would delay accrual of the claim only during the time it would take for a reasonably diligent plaintiff to investigate and discover the cause of the injury. *See Merck & Co. v. Reynolds*, 559 U.S. 633, 646, 130 S. Ct. 1784, 1794, 176 L. Ed. 2d 582 (2010) ("[T]reatise writers now describe 'the discovery rule' as allowing a claim 'to accrue when the litigant first knows or with due diligence should know facts that will form the basis for an action.'" (quoting 2 C. CORMAN, LIMITATION OF ACTIONS §§ 11.1.1, p. 134 (1991 and 1993 Supp.))). Thus, the plaintiff's lack of diligence can defeat application of the discovery rule. *See Skwira v. United States*, 344 F.3d 64, 77 (1st Cir. 2003) ("If [a plaintiff] fails to undertake a reasonably diligent investigation into the cause of injury, the law will impute to her an awareness of any knowledge that she would have uncovered if she had undertaken that inquiry." (citing *Kubrick*, 444 U.S. at 123–24 & n.10)); *Garza v. U.S. Bur. of Prisons*, 284 F.3d 930, 935, 937 (8th Cir. 2002) (holding that the discovery rule can apply to a wrongful-death claim even where the date of death is known, but concluding that the estate's representative "was certainly on inquiry notice by the time its counsel began to pursue its claims" and "actual knowledge is

22

not determinative if [the plaintiff] did not act reasonably and, 'in effect, closed [his] eyes to evident and objective facts concerning accrual of [his] right to sue'" (quoting *Chrysler Workers Ass'n v. Chrysler Corp.*, 834 F.2d 573, 579 (6th Cir. 1987))); *cf. Drazan v. United States*, 762 F.2d 56, 59 (7th Cir. 1985) (explaining, in the context of a latent-illness case, that a claim against the government under the Federal Tort Claims Act accrues "either when the government cause is known or when a reasonably diligent person (in the tort claimant's position) reacting to any suspicious circumstances of which he might have been aware would have discovered the government cause—whichever comes first").

Here, Lamartek established as a matter of law that Tammy was not diligent. Terry died on July 30, 2008, and in the draft autopsy report of August 1, 2008, the medical examiner tentatively concluded that Terry drowned. The medical examiner also arranged for Terry's scuba equipment to be inspected. Lamartek produced evidence that Tammy's attorney called the medical examiner's office on April 21, 2009; represented that he had spoken with the medical examiner "last year"; and stated he had been told that the investigation would be completed by "October [2008] at the latest," i.e., more than five months before the date of the follow-up call. Tammy's attorney further stated that "the statute of limitations against the product manufacturer is running out." Two weeks later, Tammy called the medical examiner's office herself, and told staff member Robert Golden that her attorney had not told her the cause of Terry's death. Golden explained that Terry died of myocarditis. According to Golden, Tammy said that she did not want Terry's scuba equipment sent anywhere at that time, but would "reflect on this information before deciding where she wants the equipment sent." The scuba equipment remained in the evidence room of the medical examiner's office until, at the family's request, Golden shipped the equipment to Tammy in August 2010.

Even if the same discovery rule used in federal medical-malpractice and latent-illness cases were available here, the cases applying that rule to facts such as these support the conclusion that Tammy was not diligent. Tammy knew enough about the cause of death to protect her interests by hiring counsel in 2008, even before the medical examiner's investigations were completed. *See Kronisch v. United States*, 150 F.3d 112, 121 (2d Cir. 1998) ("[A] claim will accrue when the plaintiff knows, or should know, enough of the critical facts of injury and causation to protect himself by seeking legal advice."); *Guccione v. United States*, 670 F. Supp. 527, 536 (S.D.N.Y. 1987) (same), *aff'd*, 847 F.2d 1031 (2d Cir. 1988). The reports on the investigations were finished before the end of that year, and even without any further investigation of the equipment, Tammy's counsel acknowledged the existence of a potential claim against the scuba equipment's manufacturer. *See Kubrick*, 444 U.S. at 122, 100 S. Ct. at 359 (explaining that the discovery rule does not apply to "a plaintiff in possession of the critical facts that he has been hurt and who has inflicted the injury" because "[h]e is no longer at the mercy of the latter. There are others who can tell him if he has been wronged, and he need only ask"); *Chasteen v. United States*, 334 Fed. App'x 271, 273–74 (11th Cir. 2009) (holding that the discovery rule did not apply to a medical-practice claim under the Federal Tort Claims Act, because even before the autopsy report was released, the decedent's husband suspected that his wife's physician caused her death; the report merely confirmed what he already believed); *see also Kronisch*, 150 F.3d at 121 ("A claim does not accrue when a person has a mere hunch, hint, suspicion, or rumor of a claim, but such suspicions do give rise to a duty to inquire into the possible existence of a claim in the exercise of due diligence.") (citations omitted); *id.* at 122 (holding that the claim accrued by a certain date because "based on the information he possessed prior to that date, [the claimant] believed strongly enough in his claim to (unsuccessfully) seek legal

24

representation"). Despite the acknowledgment by Tammy's counsel that the limitations period was running out, Tammy declined to take physical possession of the evidence.[18] She then timely asserted claims against other defendants under the Death on the High Seas Act, but failed to timely sue Lamartek.

In sum, we conclude that even if the discovery rule that Tammy cites might apply to some claims under the Death on the High Seas Act, Tammy's own lack of diligence bars its application here. We therefore overrule this issue and hold that the trial court did not err in granting Lamartek summary judgment on this claim on the ground that the claim is time-barred.

## 2. *DTPA*

Tammy stated in her appellate brief that she is not challenging the trial court's rulings on any causes of action other than her claims under the DTPA and the Death on the High Seas Act. In its summary-judgment reply and its appellate brief, Lamartek stated that Tammy did not plead a DTPA claim against it; however, in both of those documents, as well as in both motions for reconsideration, Lamartek also argued that any such claim was time-barred. Assuming, without deciding, that Tammy's pleadings can be construed to encompass a DTPA claim against Lamartek, we agree with Lamartek that any such claim would be time-barred.[19]

A discovery rule—with its requirement of reasonable diligence by the claimant—is expressly incorporated into the DTPA statute of limitations. *See* TEX.

---

[18] Tammy already constructively possessed the equipment. *See GTE Commc'ns Sys. Corp. v. Tanner*, 856 S.W.2d 725, 729 (Tex. 1993) (orig. proceeding) ("The right to obtain possession is a legal right based upon the relationship between the party from whom [the material] is sought and the person who has actual possession of it.").

[19] The parties also have assumed that any DTPA claim survived the trial court's dismissal with prejudice of all of Tammy's state-law wrongful-death and survival claims against Lamartek. Because doing so will not affect the outcome of this appeal, we will make the same assumption.

BUS. & COM. CODE ANN. § 17.565 (providing that DTPA claims must be filed within two years after the date on which the plaintiff discovered, "or in the exercise of reasonable diligence should have discovered," the false, misleading or deceptive act or practice). Because we have just explained that Tammy's lack of diligence bars her claim under the Death on the High Seas Act, with its three-year statute of limitations, it is unnecessary to repeat the same evidence in our discussion of a claim with a shorter limitations period. It is sufficient to point out that Tammy first asserted claims against Lamartek in March 2012—nearly six years after Terry purchased the rebreather; more than three-and-a-half years after Terry's death; more than three years after she retained counsel; and nearly three years after she declined to take physical possession of the rebreather.

We therefore conclude that Lamartek established that any DTPA claim would have accrued more than two years before Tammy sued Lamartek. We accordingly overrule this issue and hold that the trial court did not err in granting summary judgment on this claim based on limitations.

## IV. THE TRIAL AGAINST KOHLER

By the time of trial, Richie Kohler was the only remaining defendant. Although all of Tammy's remaining issues concern events that occurred during trial, we know little of what actually occurred. This is because the contents of the reporter's record is determined, in the first instance, by the appellant. *See* TEX. R. APP. P. 34.6(b)(1). Tammy chose to request only a transcript of a pre-trial hearing, the charge conference, the parties' closing arguments, and the testimony of two witnesses—Richie Kohler and herself—called in Tammy's case-in-chief. The portions of the record that are before us contain references to more than a dozen witnesses whose testimony has been omitted. Tammy also omitted from the reporter's record every trial exhibit and the entirety of the defense's case.

26

Under the Rules of Appellate Procedure, an appellant may request a partial reporter's record, but "must include in the request a statement of the points or issues to be presented on appeal and will then be limited to those points or issues." TEX. R. APP. P. 34.6(c)(1). If the appellant complies with the rule, then "[t]he appellate court must presume that the partial reporter's record designated by the parties constitutes the entire record for purposes of reviewing the stated points or issues." TEX. R. APP. P. 34.6(c)(4). Even a late-filed statement of issues will support the presumption, absent some indication that the appellee was adversely affected by the delay. *See Bennett v. Cochran*, 96 S.W.3d 227, 229 (Tex. 2002) (per curiam). But if the appellant entirely fails to submit a statement of the points or issues to be presented on appeal, "we must presume that the omitted portions of the record are relevant and would support the judgment." *Mason v. Our Lady Star of the Sea Catholic Church*, 154 S.W.3d 816, 822 (Tex. App.—Houston [14th Dist.] 2005, no pet.).

Tammy requested only a partial reporter's record but did not comply with the rules and interpretive caselaw governing such a request. Even after Kohler pointed out in his response brief that Tammy had neither provided a statement of issues nor requested a complete record of the trial proceedings, Tammy did not attempt to remedy the problem. The result is that, as discussed below, our disposition of her remaining complaints is largely driven by the presumption in support of the judgment.

## A.     Complaints of Charge Error

Tammy contends that the trial court reversibly erred by refusing to include two requested instructions in the charge and by including a question concerning allocation of responsibility. The trial court must "submit the questions, instructions and definitions" that are "raised by the written pleadings and the

evidence." TEX. R. CIV. P. 278. A trial court has broad discretion in submitting jury questions and instructions. *Interstate Northborough P'ship v. State*, 66 S.W.3d 213, 224 (Tex. 2001) (sub. op.) (jury instructions); *Indian Oil Co. v. Bishop Petroleum, Inc.*, 406 S.W.3d 644, 658 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) (jury questions). We review alleged charge errors for abuse of that discretion. *See Indian Oil Co.*, 406 S.W.3d at 658. We will reverse only if the error probably caused rendition of an improper judgment or probably prevented the appellants from properly presenting the case to the appellate court. *See* TEX. R. APP. P. 44.1(a); *Bed, Bath & Beyond, Inc. v. Urista*, 211 S.W.3d 753, 757 (Tex. 2006).

To determine whether the absence of an instruction probably caused an improper judgment, we examine the entire record. *Island Recreational Dev. Corp. v. Republic of Tex. Sav. Ass'n*, 710 S.W.2d 551, 555 (Tex. 1986) (op. on reh'g) (explaining that when determining whether a trial court reversibly erred in omitting an instruction, "the reviewing court must consider the pleadings of the parties, the evidence presented at trial, and the charge in its entirety"). In a single-theory-of-liability case, we similarly must review the entire record to determine whether the inclusion of erroneous charge questions or instructions probably caused rendition of an improper judgment. *Thota v. Young*, 366 S.W.3d 678, 693 (Tex. 2012). Here, however, no such review is possible. In addition, as discussed below, some of the complaints concern matters that are immaterial for other reasons.

1. ***Tammy failed to show that the trial court reversibly erred in refusing to instruct the jury on the elements of a voluntary-undertaking claim.***

Tammy contends that, with respect to her claim against Kohler, the trial court erred in refusing her request to instruct the jury on the elements of an undertaking claim. A defendant is liable for negligence in connection with a

28

voluntarily assumed undertaking only if (a) the defendant undertook to perform services that it knew or should have known were necessary for the plaintiffs' protection; (b) the defendant failed to exercise reasonable care in performing those services; and (c) either the plaintiffs relied upon the defendant's performance, or the defendant's performance increased the plaintiffs' risk of harm. *See Torrington Co. v. Stutzman*, 46 S.W.3d 829, 838 (Tex. 2000) (citing *Colonial Sav. Ass'n v. Taylor*, 544 S.W.2d 116, 119–20 (Tex. 1976) and RESTATEMENT (SECOND) OF TORTS § 323 (1965)).

We need not address Tammy's argument about the first of these three elements, because she cites no evidence of the second and third elements. Moreover, the reporter's record before us is incomplete. Because Tammy relies on a partial reporter's record and failed to provide a statement of the points or issues to be presented on appeal, we presume that a review of the complete record would have revealed an absence of harmful error. *See Christiansen v. Prezelski*, 782 S.W.2d 842, 842, 843–44 (Tex. 1990) (per curiam) (holding that an appellate court is unable to conclude that an alleged error is harmful if the appellant neither requests the complete reporter's record nor complies with the procedures for requesting a partial reporter's record). We therefore conclude that the trial court did not reversibly err in refusing to instruct the jury on the elements of an undertaking claim.

### 2. *Tammy failed to show that the trial court reversibly erred in asking the jury to allocate responsibility for Terry's death.*

Tammy next complains that the trial court erred by including in the charge a question in which the jury was asked to allocate responsibility for Terry's death among Terry, Kohler, and two non-parties. Tammy argues that there was no evidence that Terry or the two non-parties were responsible for the death. Given the partial state of the record, however, we must presume that there was such

evidence. Moreover, the jury was instructed not to answer the question unless it found "that a wrongful act, neglect or default of a vessel or a person proximately caused the death." Because the jury failed to find that anyone caused the death, it did not answer the question allocating responsibility. Thus, the inclusion of the question did not lead to an improper judgment or prevent Tammy from properly presenting her case on appeal. *See* TEX. R. APP. P. 44.1(a); *Fleet v. Fleet*, 711 S.W.2d 1, 2 (Tex. 1986) (per curiam) (explaining that issues submitted to the jury are immaterial "if their answers can be found elsewhere in the charge or if they cannot alter the effect of the verdict").

### 3. *Tammy failed to show that the trial court reversibly erred in failing to instruct the jury not to consider testimony as to whether she agreed to release any party from liability.*

Tammy argues that the trial court erred in refusing her proposed instruction, "Do not consider any testimony as to whether or not the Plaintiffs agreed to release the Defendant Kohler or any party from liability."[20] Once again, we cannot conclude based on the record before us that the trial court reversibly erred in refusing this instruction. The reporter's record did not include the actual release. Moreover, in the first question of the charge, the jury was asked if "a wrongful act, neglect or default of a vessel or a person proximately caused the death of Terry Sean DeWolf." The jury answered, "No." Because the jury failed to find that Kohler caused Terry's death, Kohler is not liable; thus, the validity or invalidity of the release from liability does not affect the outcome of the case. *Cf. City of Brownsville v. Alvarado*, 897 S.W.2d 750, 752 (Tex. 1995) (explaining that the

---

[20] Tammy appears to have been the only plaintiff, and she alleged that she sued in her capacities as an individual, as a representative of Terry's estate, and as next friend of her three children, one of whom she alleged was a minor. Terry was not a plaintiff, and in the record before us, Tammy did not ask the trial court to instruct the jury to disregard testimony that he agreed to release anyone from liability. She also did not ask the trial court to include an instruction to the jury to disregard any documentary evidence.

defendant was exonerated from liability because the jury failed to find that the defendant caused the death; thus, the jury's answer to a question about the decedent's negligence could not have altered the verdict).

For the foregoing reasons, we overrule each of Tammy's complaints of charge error.

## B    Complaints of Improper Jury Argument

Three of Tammy's appellate complaints concern allegations of improper jury argument. We conclude that these complaints were not preserved.[21]

If the probable harm from an improper jury argument is curable, then the error must be preserved by obtaining an adverse ruling on a timely objection, motion to instruct the jury, or motion for mistrial. *See* TEX. R. APP. P. 33.1(a); *Living Ctrs. of Tex., Inc. v. Peñalver*, 256 S.W.3d 678, 680 (Tex. 2008) (per curiam); *Tex. Emp'rs' Ins. Ass'n v. Haywood*, 153 Tex. 242, 244–45, 266 S.W.2d 856, 858 (1954). Most instances of improper jury argument can be cured if the argument is retracted or the trial court instructs the jury to disregard it. *Living Ctrs. of Tex., Inc.*, 256 S.W.3d at 680. If the probable harm is incurable, the complaining party need not object at the time, but can choose instead to preserve error through a motion for new trial. *See* TEX. R. CIV. P. 324(b)(5); *Clark v. Bres*, 217 S.W.3d 501, 509 n.1 (Tex. App.—Houston [14th Dist.] 2006, pet. denied) ("While no contemporaneous objection is required in order to raise incurable jury argument on appeal, a party must include incurable jury argument as a point in a motion for new trial.").

---

[21] Because the complaints were not preserved, we do not reach the question of whether the arguments actually were improper, and if so, whether any improper jury arguments were incurable. *But cf. Wooten v. S. Pac. Transp. Co.*, 928 S.W.2d 76, 80 (Tex. App.—Houston [14th Dist.] 1995, no pet.) (holding that the lack of a complete record precluded appellate review of allegedly incurable jury argument).

Two of Tammy's complaints of improper jury argument were not raised in the trial court through a contemporaneous objection or a timely motion for an instruction or for a new trial. Specifically, there was no objection during closing argument that Kohler's counsel engaged in improper jury argument concerning assumption of the risk or that any argument constituted an improper personal attack on Tammy's counsel. She did not move for an instruction to the jury to disregard any such statements, and in her motion for new trial, she did not contend that any such statements constituted an incurable jury argument. These complaints accordingly have not been preserved for our review. *See* TEX. R. CIV. P. 33.1(a).

Tammy's remaining complaint was raised through a contemporaneous objection, but the trial court did not rule on it, and Tammy did not raise the issue again in her motion for new trial. Thus, Tammy has failed to preserve her appellate complaint that Kohler's counsel engaged in improper jury argument by suggesting that Tammy possessed a dive computer that was mentioned but not produced at trial.[22] *See* TEX. R. CIV. P. 324(b)(5) (explaining that a point in a motion for new trial is a prerequisite to a complaint on appeal of "[i]ncurable jury argument *if not otherwise ruled on* by the trial court") (emphasis added).

---

[22] The dive computer was part of Terry's dive equipment. Kohler testified that a dive computer "records every aspect of your dive, time, depth, water temperature, and also transmits to you backup decompression information." It also would have shown Terry's "rate of ascent and rate of descent." Kohler testified that when Terry's body was recovered, he looked at the dive profile on Terry's dive computer, and it showed that Terry moved laterally near the surface for a minute or two, then stopped moving and dropped straight down to the ocean floor, where he remained until his body was discovered eight hours later. Kohler also testified that he had asked for the dive computer in this case, but that it had never been produced. In closing argument, Kohler's counsel referred to the testimony of a witness from the medical examiner's office who stated that he shipped the dive computer to Tammy, and testimony from one of Tammy's relatives that Tammy received the dive computer and put it in her vehicle. The testimony of these witnesses was not included in the reporter's record on appeal.

## C. Complaint of Improper Comment on the Weight of the Evidence

Tammy asserts that it was "[f]undamental error for the judge to tell the jury the plaintiff had the dive computer." We construe this as a complaint that the trial court made an improper comment to the jury on the weight of the evidence. The exchange that is the subject of her complaint occurred while she was testifying. The entirety of that exchange is as follows:

> Q: And after you knew that we were looking for the dive computer, correct?
>
> A: We never had the dive computer.
>
> Q: You knew that we were looking for the dive computer?
>
> A: We were looking for it, too.
>
> PLAINTIFF'S COUNSEL: Objection, Your Honor, it's duplicative and it's argumentative.
>
> THE COURT: She's got it. It's overruled.

In asserting that the trial court told the jury that the plaintiff had the dive computer, Tammy presumably is referring to the sentence, "She's got it."

For four reasons, this complaint must be overruled. First, we cannot be certain of the antecedent to either of the pronouns in the sentence, "She's got it." Second, contrary to Tammy's characterization, the record does not indicate that the trial court was addressing the jury. Third, even assuming without deciding that this statement could have been construed as a comment on the weight of the evidence, Tammy waived the complaint by failing to object to it. *See Moody v. EMC Servs., Inc.*, 828 S.W.2d 237, 145 (Tex. App.—Houston [14th Dist.] 1992, writ denied). And fourth, as previously stated, we presume that the omitted portions of the record support the judgment. *See Bennett*, 96 S.W.3d at 229 ("There is no question that, had [the appellant] completely failed to submit his statement of points or issues, Rule 34.6 would require the appellate court to affirm the trial court's

judgment."). Thus, even if error had occurred and had been preserved, we still would presume that the omitted portions of the record would have shown the error to be harmless.

## D.    Complaint of Erroneous Admission of Evidence

Tammy also asserts that the trial court erred in "allow[ing] the void release into testimony." The erroneous admission of evidence is reversible only if it resulted in an improper judgment. *Nissan Motor Co. Ltd. v. Armstrong*, 145 S.W.3d 131, 144 (Tex. 2004). Tammy has not cited any objectionable testimony, and she does not contend that its admission resulted in an improper judgment, but in any event, the absence of a complete record would prevent us from determining that Tammy was probably harmed by the erroneous admission of evidence. *See id.* ("We review the entire record, and require the complaining party to demonstrate that the judgment turns on the particular evidence admitted."). We instead presume that the omitted portions of the record support the judgment. We therefore overrule this issue.

## E.    Arguments About the Effect of a Release

Finally, Tammy argues that a document signed by Terry DeWolf releasing Kohler from liability is void. We conclude that no reversible error is shown. First, the release is not in the reporter's record. Second, Tammy has not identified the trial court's ruling to which her arguments are addressed. And third, the jury failed to find that Kohler caused the decedent's death. Because Kohler accordingly is not liable, the validity or invalidity of the release from liability does not affect the outcome of the case. *See Fleet v. Fleet*, 711 S.W.2d 1, 2 (Tex. 1986) (per curiam) (explaining that issues submitted to the jury are immaterial "if their answers can be found elsewhere in the charge or if they cannot alter the effect of the verdict").

34

## V. CONCLUSION

After considering the arguments raised in Tammy's appellate brief and reviewing the partial record before us, we overrule each of the issues presented and affirm the trial court's judgment.

/s/     Tracy Christopher
        Justice

Panel consists of Justices Christopher and Busby, and Visiting Judge Dorfman.[23]

---

[23] The Honorable Grant Dorfman, Judge of the 334th Civil District Court of Harris County, sitting by assignment pursuant to section 74.003(h) of the Government Code. *See* TEX. GOV'T CODE ANN. § 74.003(h) (West 2013).