**Reversed and Rendered and Memorandum Opinion filed October 27, 2022.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-20-00862-CV

---

## VALERO REFINING COMPANY - OKLAHOMA D/B/A VALERO ARDMORE REFINERY, Appellant

### V.

### GREGORY COMEAUX, Appellee

---

**On Appeal from the 268th District Court**
**Fort Bend County, Texas**
**Trial Court Cause No. 20-DCV-276062**

---

## MEMORANDUM OPINION

Rarely does a foreign defendant challenge the Texas courts' jurisdiction over it in a lawsuit and successfully obtain a lack-of-personal-jurisdiction dismissal, only to then get hauled back into the case to do it all over again. But here we are–with Appellant Valero Refining Company, who prevailed in Harris County but now appeals the Fort Bend district court's interlocutory order denying its second

Rule 120a special appearance.

There's a common-sense appeal to Valero's first argument: one-and-done. But the argument, whether premised on res judicata or collateral estoppel, is a round peg in a square hole. After Valero secured a dismissal on its first special appearance in Harris County, Appellee Gregory Comeaux continued his claims against another defendant. The suit was then transferred to Fort Bend County and plaintiff/appellee then amended his petition to bring Valero back into the suit. This time, the Fort Bend court ruled against Valero's special appearance from which this appeal arises.

Valero still secures its jurisdictional victory today based on its second issue. In the absence of jurisdictional facts pled, the Fort Bend district court was required to grant Valero's second special appearance. We reverse and render judgment dismissing Valero without prejudice to filing in a court with proper jurisdiction.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Valero hired Diamond Refractory Services ("Diamond") to perform work at its refinery in Ardmore, Oklahoma (the "Refinery"). Comeaux was working as an employee of Diamond at the Refinery when an employee of TEAM, Inc., another Texas subcontractor performing work at the Refinery, released a caustic substance on the premises. This substance fell on Comeaux's helmet, face, eyes, and arm, which Comeaux alleges was painful and ultimately left him with permanent scarring.

In September 2019, Comeaux filed a lawsuit in Harris County district court alleging personal injuries arising from the Refinery incident, and named Valero and John Doe Company as defendants. Apart from alleging facts of the incident in Oklahoma, the suit only made two other geographical references: the suit alleges

2

that Comeaux resided in Harris County, and that Valero is authorized to do business in Oklahoma.

Valero filed a special appearance ("First Special Appearance") challenging the Texas court's jurisdiction. In support, Valero attached an affidavit of its corporate representative, Ethan A. Jones, which stated in pertinent part:

> 1. Valero Refining Company - Oklahoma is a Michigan corporation and is licensed to do business in Oklahoma. Valero Ardmore Refinery's principal business activities are in Oklahoma.
>
> 2. Valero Ardmore Refinery is not a resident of Texas.
>
> 3. Valero Ardmore Refinery does not now and has never owned or operated any business in the State of Texas.
>
> 4. The alleged incident made the basis of this lawsuit occurred in the State of Oklahoma.[1]

The hearing was set for January 31, 2020, and on January 30, Comeaux amended his petition adding TEAM as a defendant, alleging a TEAM employee was responsible for the chemical spill, and asserting that TEAM was authorized to do business in Texas. On March 9, the Harris County district court entered an order granting Valero's First Special Appearance, and dismissed Comeaux's claims against Valero without prejudice.

On April 14, Comeaux filed a verified motion to reinstate the case on the court's trial docket.[2] The motion did not challenge the trial court's dismissal of Valero, but sought to draw the trial court's attention to the addition of TEAM as a defendant prior to the court's jurisdictional dismissal of Valero, and requested pretrial orders for the case to proceed against TEAM. The trial court granted the

---

[1] On appeal, Jones's sworn statements remain the only evidence offered to support any jurisdictional fact that any party has offered.

[2] Whether such a motion was necessary is not clear from our record. There is no indication that the court had taken any action to dismiss the claims against TEAM, Inc.

3

motion to reinstate, and by mid-June, TEAM appeared in the lawsuit and filed a motion to transfer the case to Fort Bend County. Comeaux agreed to the venue transfer, and the case was transferred and docketed in Fort Bend County district court.

On September 15, Comeaux filed his second amended petition in Fort Bend (Fort Bend Petition). The Fort Bend Petition named Valero again. The Fort Bend Petition contained some new jurisdictional allegations; under the heading "Venue and Jurisdiction" it states:

> The Court has venue of this case in that the incident made the basis of this lawsuit [sic]. As this is the county in which the Defendant company TEAM INC a Texas Corporation has resided at the time of the accrual of the cause of action with business contacts with [Valero] and an unknown entity.

Also pertinent to this appeal, under the heading "Background" the Fort Bend Petition states:

> At all times relevant to this case, the Defendants were acting by and through their agents, employees and representatives all in the course and scope and in the furtherance of the business affairs of the Valero Ardmore. Valero Ardmore always were in control of all contractors and subcontractors working on their premises i.e. TEAM INC and Diamond Refractory Services, L.P. as the evidence will reveal. Valero engaged in business contracts with both companies that are a Texas corporation and a Texas Limited Partnership.

In response to being renamed in the lawsuit, Valero filed another Verified Special Appearance ("Second Special Appearance"), contending that Comeaux failed to plead facts sufficient to establish jurisdiction, and asserting that Valero was not a Texas resident, and lacked the contacts with Texas sufficient to establish jurisdiction. Valero also asserted that the issue was precluded as a result of its prior special appearance and the Harris County court's prior order granting the special appearance. Valero attached to its Second Special Appearance its First

4

Special Appearance and supporting affidavit, memorandum supporting the First Special Appearance, and the Harris County court's order granting the First Special Appearance.

Comeaux filed a response, which alleges a new previously unpled theory, that TEAM "was the 'intermediary' that recruited and contracted the Plaintiff to work for [Valero] at its premises in Ardmore, Oklahoma." Tex. Civ. Prac. & Rem. Code § 17.042(3)(Valero "recruits Texas residents, directly or through an intermediary located in this state, for employment inside or outside this state.").

On Dec. 10, the trial court signed a written order denying Valero's Second Special Appearance. Valero filed its notice of appeal a few days before the year's end.

## II. CLAIM AND/OR ISSUE PRECLUSION

Valero's first issue is that the Fort Bend trial court erred in failing to apply the principle of res judicata to the Harris County trial court's order dismissing Valero for lack of jurisdiction. After having been dismissed, Valero was served with the Fort Bend Petition in a new venue, with a new cause number, and new judge.

Under these circumstances, one can hardly blame Valero for raising the argument, and it's true that a similar doctrine precluding the relitigation of the personal jurisdiction issue that resulted in Valero's dismissal *might* apply to a subsequent case. *Nguyen v. Desai*, 132 S.W.3d 115, 118 (Tex. App.—Houston [14th Dist.] 2004, no pet.)(discussing the application of direct estoppel or collateral estoppel in subsequent litigation of personal jurisdiction issue).[3] But there is no

---

[3] The case incidentally also reveals that it was by no accident that the veteran trial judge in this case sitting in on the 164th, choose to interlineate the phrase "without prejudice" on the order she ultimately signed.

prior or subsequent case, just this one, transferred from one Texas county to another adjacent county with a prior interlocutory order under reconsideration. *See* Tex. R. Civ. P. 87. Comeaux's 2019 Harris County lawsuit survives in the form of the underlying Fort Bend case. Res judicata and related doctrines are affirmative defenses that refer to the manner a *prior* case concluded. *Walsh v. Tex. Dep't of State Health Services*, 634 S.W.3d 496, 503–04 (Tex. App.—Houston [14th Dist.] 2021, pet. denied)(describing the two doctrines appropriately raised in a second action, following the complete litigation and resolution of facts (collateral estoppel) or claims (res judicata) in a prior action). We conclude that because this case is still the first case, those doctrines do not apply. *DeWolf v. Kohler*, 452 S.W.3d 373, 384 (Tex. App.—Houston [14th Dist.] 2014, no pet.)(plaintiff not required to file interlocutory appeal of order dismissing party for lack of personal jurisdiction, permitted to wait until conclusion of the case).

We therefore overrule appellant's first issue.

### III. PERSONAL JURISDICTION

Valero's second issue is that the Fort Bend trial court erred in denying its Second Special Appearance. Valero frames the issue on appeal as a question "whether Texas courts have personal jurisdiction over a foreign entity that conducts no business in Texas and has no contacts with Texas." Of course, Valero presented no evidence that it "conducts no business in Texas and has no contacts with Texas." So, the more interesting question is whether that omission was fatal to its special appearance.

Whether the trial court can exercise personal jurisdiction over Valero is a question of law, which we review de novo. *Old Republic Nat'l Title Ins. Co. v. Bell*, 549 S.W.3d 550, 558 (Tex. 2018). When, as here, the trial court did not issue findings of fact and conclusions of law, all relevant facts that are necessary to

6

support the judgment and supported by evidence are implied. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002). When jurisdictional facts are undisputed, whether those facts establish jurisdiction is a question of law. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004).

The exercise of personal jurisdiction in Texas, turns on both federal and state law. *Searcy v. Parex Res., Inc.*, 496 S.W.3d 58, 66 (Tex. 2016). Courts may exercise personal jurisdiction over a defendant when (1) the Texas long-arm statute grants jurisdiction, and (2) the exercise of jurisdiction comports with federal and state constitutional guarantees of due process. *Id.*

*The Long Arm Statute*

The Texas long-arm statute allows the exercise of personal jurisdiction over a nonresident defendant "doing business" in Texas. The statute provides that while one might be "doing business" in other ways sufficient to confer jurisdiction, it is at least doing so when it:

> (1) contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state;
>
> (2) commits a tort in whole or in part in this state; or
>
> (3) recruits Texas residents, directly or through an intermediary located in this state, for employment inside or outside this state.
>
> Tex. Civ. Prac. & Rem. Code 17.042.

*Federal Due Process Standard*

Federal due process requires that the nonresident must have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61

7

S.Ct. 339, 85 L.Ed. 278 (1940) ); *accord Moki Mac River Expeditions*, 221 S.W.3d at 575.

A defendant's contacts with the forum can give rise to either general or specific jurisdiction. *Luciano v. SprayFoamPolymers.com, LLC*, 625 S.W.3d 1, 8 (Tex. 2021); *Spir Star*, 310 S.W.3d at 872. A court has general jurisdiction over a nonresident defendant whose "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *TV Azteca*, 490 S.W.3d at 37 (alteration in original) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 127, 134 S.Ct. 746, 187 L.Ed.2d 624 (2014)). A corporation is "essentially at home" in its place of incorporation, its principal place of business, and—rarely— when a corporation's contacts with the forum state are so substantial, continuous, systematic, and of a such a nature that general jurisdiction is justified. *See Ford Motor Co.*, 141 S. Ct. at 1024; *Daimler AG v. Bauman*, 571 U.S. 117, 137–39 (2014).

The minimum contacts necessary for specific jurisdiction are established if the defendant purposefully avails itself of the privilege of conducting activities in the forum state and the suit arises out of *or* relates to the defendant's contacts with the forum. *Luciano v. SprayFoamPolymers.com, LLC*, 625 S.W.3d 1, 8–9 (Tex. 2021). We consider three factors in determining whether a defendant purposefully availed itself of the privilege of conducting activities in Texas:

> First, only the defendant's contacts with the forum are relevant, not the unilateral activity of another party or a third person. Second, the contacts relied upon must be purposeful rather than random, fortuitous, or attenuated .... Finally, the defendant must seek some benefit, advantage or profit by availing itself of the jurisdiction.

*Moncrief Oil Int'l Inc.*, 414 S.W.3d at 151 (quoting *Retamco Operating, Inc.*, 278 S.W.3d at 338–39). We consider all of the evidence and focus on "the quality and

nature of the contacts, not the quantity." *Id.*

The relatedness component of minimum contacts requires that there be a connection between the nonresident defendant's purposeful contacts in Texas and the plaintiff's suit. *Luciano*, 625 S.W.3d at 14. The inquiry demands only that the suit "arise out of *or* relate to the defendant's contacts with the forum." *Ford Motor Co.*, 141 S. Ct. at 1026 ("[W]e have never framed the specific jurisdiction inquiry as always requiring proof ... that the plaintiff's claim came about because of the defendant's in-state conduct."). It does not require a "strict" causal relationship connecting the defendant's in-state activity to the litigation. *Luciano*, 625 S.W.3d at 14-15.

*Texas's Special Appearance Procedure*

The plaintiff bears the initial burden of pleading allegations sufficient to confer jurisdiction under the long-arm statute. *See Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 414 S.W.3d 142, 149 (Tex. 2013). If the plaintiff fails to do so, the defendant can negate jurisdiction by proving it does not reside in Texas. *Kelly v. Gen. Interior Const. Inc.*, 301 S.W.3d 653, 658 (Tex. 2010). If the plaintiff meets the initial burden, the defendant bears the burden to negate all bases of personal jurisdiction alleged by the plaintiff. *Id.* at 658; *Luciano v. SprayFoamPolymers.com, LLC*, 625 S.W.3d 1, 8 (Tex. 2021). The defendant may do so by showing that even if the plaintiff's allegations are true, the evidence is legally insufficient to establish jurisdiction. *Id.* at 659. Or, the defendant may present evidence to disprove the plaintiff's allegations, and the plaintiff can respond with its own evidence or risk dismissal if it cannot present evidence establishing jurisdiction. *See id.* Because the plaintiff defines the scope and nature of the lawsuit, the defendant's corresponding burden to negate jurisdiction is tied to the allegations in the plaintiff's pleadings. *Id.* at 658.

**Analysis**

Valero contends that Comeaux failed to meet his initial burden of pleading allegations sufficient to confer jurisdiction under the long arm statute. Comeaux's Fort Bend Petition affirmatively states Valero is not a resident, and alleges only that Valero engaged in "business contracts" with TEAM and Diamond, the two Texas subcontractors at its facility on the day of the incident. In context, the allegations in the petition tend only to support that Valero engaged in "business contracts" with TEAM and Diamond *in Oklahoma*; nothing indicates such business contracts were executed or performed *in Texas*. In the absence of additional jurisdictional allegations, Valero was only required then to prove that it was a non-resident and it did just that.

Is it so simple? Our appraisal of the plaintiff's pleadings might not stop with the petition, as courts (including this one) often cite the proposition a "trial court may consider the plaintiff's original pleadings *as well as the response to the defendant's special appearance in determining whether the plaintiff satisfied the initial burden.*" *Pappie v. Batra*, No. 14-21-00290-CV, 2022 WL 1671100, at *4 (Tex. App.—Houston [14th Dist.] May 26, 2022, no pet.)(emphasis added). Ideally, a plaintiff seeks to satisfy this burden through an amendment to his petition, but this principle of permitting new supportive jurisdictional allegations in the plaintiff's special-appearance response is entrenched in our jurisprudence and is frequently utilized, as in this case. Nevertheless, belated allegations prompt the trial court decide the issue on the evidence rather than the allegations. *See Kelly v. Gen. Interior Const., Inc.*, 301 S.W.3d 653, 659 (Tex. 2010) ("When the pleading is wholly devoid of jurisdictional facts, the plaintiff should amend the pleading to include the necessary factual allegations . . . *thereby allowing jurisdiction to be decided based on evidence rather than allegations, as it should be.*"). So we

10

consider if in Comeaux's response to Valero's Second Special Appearance he added any allegations and supported them with evidence.

In Comeaux's response to Valero's Second Special Appearance, he alleged that TEAM "was the 'intermediary' that recruited and contracted [him] to work for [Valero] at its premises in Ardmore, Oklahoma."[4] To support the particular allegation of an agency relationship, Comeaux was required to show that Valero had the right to control both the means and the details of the TEAM's work, evidence of actual or apparent authority, or that the Valero later ratified TEAM's alleged recruiting efforts. *Greenfield Energy, Inc. v. Duprey*, 252 S.W.3d 721, 733 (Tex. App.—Houston [14th Dist.] 2008, no pet.). Comeaux provided no evidence to support the allegation. Our precedent requires that an alleged agency relationship cannot be presumed; rather, it must be proven by the party asserting such a relationship exists. See *Id.*; *Schultz v. Rural/Metro Corp. of New Mexico–Texas*, 956 S.W.2d 757, 760 (Tex. App.–Houston [14th Dist.] 1997, no pet.). We cannot imply such a factual finding and instead must infer that the trial court impliedly found that TEAM was not acting as Valero's agent. *Id.* Based on this record, Valero merely needed to prove its nonresident status to negate all potential bases for jurisdiction that Comeaux alleged.

Even presuming Comeaux satisfied the long arm statute, the record before the trial court lacked essential evidence to support the trial court's denial of the special appearance under a constitutional analysis. The substances of Comeaux's constitutional argument and allegations in his response to the Second Special Appearance are as follows:

---

[4] A foreign defendant's recruiting and training if properly supported in the record can form a valid basis for jurisdiction. See e.g., Weeks Marine, Inc. v. Carlos, No. 01-21-00015-CV, 2021 WL 4897714, at *7 (Tex. App.—Houston [1st Dist.] Oct. 21, 2021, pet. filed)(noting significant evidentiary record of recruiting and training in Texas).

11

Valero Ardmore, the nonresident defendant has "purposefully availed" itself of the privileges and benefits of conducting business in the foreign jurisdiction to establish sufficient contacts with the forum to confer personal jurisdiction through its interrelated relationship with Team Inc. a Texas Corporation which recruited Plaintiff, Gregory Comeaux to work for Defendant, Valero Ardmore Refinery. Thus, Defendant, Valero Ardmore Refinery's Motion for Special Appearance should be denied."

Comeaux failed to support these contentions in his special-appearance response with *any* evidence. Valero filed a reply challenging these contentions. Even if accepted as true that an "interrelated relationship" between TEAM and Valero existed, absent proof of agency, Comeaux ignores the first principle of the purposeful availment analysis that only *Valero's* contacts with Texas are relevant, not the unilateral activity of another party or a third person. Even if TEAM recruited Comeaux or other Texas employees to work at the Valero site, there's no allegation or evidence that Valero intended or sought that result. There is no allegation or evidence that Valero had any intention that TEAM or Diamond would recruit Comeaux to work at its facility. *See Old Republic Nat'l Title Ins. Co. v. Bell*, 549 S.W.3d 550, 561 (Tex. 2018) (rejecting notion that communications with Texas resident are sufficient contacts with the forum state itself to confer jurisdiction, where there is no evidence defendant ever sought a benefit, advantage, or profit from the communications alleged). If there is an abundance of such proof, none of it was placed before the trial judge.

We conclude that no valid theory of personal jurisdiction has been alleged and that Comeaux failed to provide any evidence to support his theory of agency. No attempt was made to establish general jurisdiction and no sufficient allegation or evidence was supplied in support of specific jurisdiction based on third-party recruiting in Texas. On this record the Fort Bend trial court's ruling cannot be upheld.

We therefore sustain Valero's first issue.

## IV. CONCLUSION

We reverse and render judgment dismissing Valero without prejudice to refiling in a court with competent jurisdiction.


/s/     Randy Wilson
        Justice

Panel consists of Justices Wise, Poissant, and Wilson.