**Affirmed and Memorandum Opinion filed January 10, 2023.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-21-00615-CV

---

## RONALD ARNESS PERKINS AND CAROLYN LEBLANC GAUNTHER, Appellants

## V.

## HOMEOWNERS OF AMERICA INSURANCE COMPANY, Appellee

---

**On Appeal from the 239th District Court
Brazoria County, Texas
Trial Court Cause No. 101209-CV**

---

## M E M O R A N D U M   O P I N I O N

In this appeal arising from a claim under a homeowners' insurance policy, the homeowners contend that the trial court erred in granting their insurer summary judgment disposing of the counterclaims against the insurer. We affirm.

## I.

Ronald Perkins and Carolyn LeBlanc Gauther[1] are the named insureds on a policy issued by Homeowners of America Insurance Company ("the Insurer") covering a property in Rosharon, Texas. Perkins and Gauther made a claim for water damage from a roof leak occurring on August 29, 2017, and the Insurer promptly acknowledged the claim. An independent adjuster inspected the property and estimated damages at $526.16, which was less than the policy deductible; thus, the Insurer made no payment. The Insurer informed Perkins and Gauther of the claims decision on October 17, 2017.

On September 24, 2018—nearly a year later—an attorney representing Perkins wrote to the Insurer to claim that the home sustained damages estimated at $58,829.42. The attorney enclosed a damage estimate prepared by David Sienema of Case Strategies Group.

On October 8, 2018, the Insurer wrote to Perkins's counsel, advising him that it was invoking the policy's appraisal process and identifying the Insurer's designated appraiser. Perkins's counsel responded that Perkins's appraiser was Henry Sienema, vice president of Case Strategies Group.

The policy requires appraisers to be "qualified," and the policy defines a "qualified" appraiser as one who, among other things, is "competent, impartial, and disinterested" and who has no "financial interest that is conditioned on the outcome of the appraisal or the claim." Inasmuch as David Sienema of Case Strategies Group prepared the estimate, the Insurer questioned whether Henry Sienema, a person who has the same last name and is the vice president of the same company, met the

---

[1] Gauther is also identified in the record as Carolyn LeBlanc Gaunther, Carolyn LeBlanc Gauther Perkins, and Carolyn Gauther Perkins. We use the name by which she is identified in the insurance policy at issue.

policy's definition of "qualified." In accordance with the policy's terms, the Insurer wrote to Perkins's counsel on November 29, 2018, asking for disclosure within seven days of Henry Sienema's qualifications, fee agreement, and any facts bearing on his independence, neutrality, or impartiality. Perkins's counsel did not respond.

On December 20, 2018, and again pursuant to the policy's terms, the Insurer wrote to Perkins's counsel renewing that request and notifying the attorney that the Insurer was exercising its rights under the policy to separate examinations under oath (EUOs) of Perkins, Gauther, and Henry Sienema. The attorney responded that "our client is not available for an EUO at this time," and did not mention Gauther or Henry Sienema.

On February 19, 2019, the Insurer sued Perkins and Gauther in district court to compel their examinations under oath. The Insurer sought declarations that (a) Perkins, Gauther, and Sienema are required by the policy to submit to separate EUOs; (b) Perkins and Gauther must appoint a "qualified" appraiser as that term is defined in the policy; and (c) based on his affiliation with Case Strategies Group, Henry Sienema is not qualified to serve as Perkins's and Gauther's appraiser. Finally, the Insurer sought to recover its attorney's fees under the Uniform Declaratory Judgments Act.[2] Perkins counterclaimed for unfair settlement practices, common-law fraud, violation of the statutory duty to promptly pay covered claims, breach of contract, and breach of the common-law duty of good faith and fair dealing.[3]

---

[2] *See* TEX. CIV. PRAC. & REM. CODE § 37.009.

[3] Although the parties refer to "the Defendants' counterclaims," Gauther did not file any counterclaims or even answer the suit. Nevertheless, she made a general appearance in the lawsuit inasmuch as her counsel filed responses to motions on behalf of both her and Perkins, including a response to the Insurer's motion to show authority.

On May 8, 2019, the trial court ruled on most of the Insurer's claims. The trial court ordered Perkins, Gauther, and Henry Sienema "to fully and completely comply" with the Insurer's request to submit to separate examinations under oath. Perkins and Gaunther were additionally ordered (a) to "provide the qualifications, fee arrangement, and any facts having a bearing on the independence, neutrality, or impartiality of Henry Sienema"; (b) to "fully and completely participate in the appraisal process pursuant to the Policy"; (c) to "appoint a '<u>qualified</u>' appraiser as that term is defined in the Policy";[4] and (d) to "cooperate with [the Insurer] during its investigation of the Claim."

After attempting unsuccessfully to set Perkins's and Gauther's EUOs in March and August of 2020, the Insurer set them for September 16, 2020. Neither Perkins nor Gauther appeared. Finally, Perkins and Gauther appeared for their respective EUOs on April 8, 2021, but although the policy required each to sign the transcript of his or her EUO, neither did so. They produced no information on Henry Sienema.

Eventually, the Insurer moved for traditional summary judgment on Perkins's counterclaims on the grounds that the failure to comply with the policy's provisions and to cooperate in the appraisal process had prejudiced the Insurer, who had been forced to litigate this suit for years in an attempt to compel their cooperation and who was exposed to the risk of penalty interest due to Perkins's and Gauther's non-compliance.[5] Perkins and Gauther responded by de-designating Henry Sienema as

---

[4] Underlining in original.

[5] *See* TEX. INS. CODE §§ 542.058(a), 542.060; *see also In re Universal Underwriters of Tex. Ins. Co.*, 345 S.W.3d 404, 411 (Tex. 2011) (orig. proceeding) ("[P]rejudice to a party may arise in any number of ways that demonstrate harm to a party's legal rights or financial position.").

4

their appraiser a week before the summary-judgment hearing and designating a different appraiser.

The trial court granted the Insurer's summary-judgment motion. In a single issue, Perkins and Gauther challenge that ruling.

**II.**

In a threshold issue, the Insurer contends that the judgment is not final because it does not address the Insurer's claim for attorney's fees. We disagree. In the trial court's order of May 8, 2019, it granted most of the declaratory relief the Insurer requested and denied the Insurer's request for attorney's fees.

After the trial court signed that order, the Insurer's only remaining claim was its request for a declaration that Henry Sienema is not qualified to act as Perkins's and Gauther's appraiser; however, that request was rendered moot when Perkins and Gauther de-designated him and designated a different appraiser. *See Meeker v. Tarrant Cnty. Coll. Dist.*, 317 S.W.3d 754, 759 (Tex. App.—Fort Worth 2010, pet. denied) ("An issue may become moot when a party seeks a ruling on some matter that, when rendered, would not have any practical legal effect on a then-existing controversy.").

This left only Perkins's counterclaims, which were eliminated when the trial court granted the Insurer's summary-judgment motion. Because that order disposed of all remaining claims in the case, it is a final judgment. *See Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 200 (Tex. 2001) ("A judgment that finally disposes of all remaining parties and claims, based on the record in the case, is final . . . .").

We therefore conclude that we have jurisdiction to consider the merits of this appeal of the summary judgment.

5

## III.

We review summary judgments de novo. *See Boerjan v. Rodriguez*, 436 S.W.3d 307, 310 (Tex. 2014) (per curiam). To prevail on a traditional motion for summary judgment, the movant must show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215–16 (Tex. 2003). If the movant carries this burden, the burden shifts to the nonmovant to raise a genuine issue of material fact precluding summary judgment. *Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 84 (Tex. 2018) (citing *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995)). On review, we construe the evidence in the light most favorable to the non-movant, crediting evidence favorable to the nonmovant if a reasonable juror could and disregarding contrary evidence unless a reasonable juror could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009).

The appellant must negate each ground on which the trial court may have granted summary judgment. *See DeWolf v. Kohler*, 452 S.W.3d 373, 388 (Tex. App.—Houston [14th Dist.] 2014, no pet.). Here, however, Perkins's and Gauther's arguments in response, both in the trial court and on appeal, do not correspond to the grounds on which the Insurer sought summary judgment or to the salient facts.

Perkins and Gauther first argue that they are able to establish each element of each of their causes of action. But although a party "may move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial,"[6] the Insurer did not do so here.

---

[6] TEX. R. CIV. P. 166a(i).

6

The Insurer's traditional summary-judgment motion is based on the terms of the insurance policy. The policy provides that the Insurer has "no duty to provide coverage under this policy if the [insured's] failure to comply with the following duties is prejudicial" to the Insurer. The insureds' duties include the duty cooperate in the investigation of a claim, to submit themselves and their representatives to EUOs while not in the presence of any other insured, and for each examinee to sign the transcript of his or her EUO. If the appraisal process is invoked, each party must choose a qualified appraiser and notify the other party of the appraiser's identity within fifteen days after receiving a written request from the other. The two appraisers then choose a qualified umpire, and an itemized decision agreed to by any two of those three and filed with the Insurer is a binding determination of the amount of the loss. Finally, unless waived in a written agreement, completion of this appraisal process is a condition precedent to an insured's suit against the Insurer concerning the amount of a loss payment.

The Insurer sought summary judgment on the grounds that it has been prejudiced by Perkins's and Gauther's failure or unreasonable delay in complying with conditions precedent to coverage and suit and by their failure to cooperate in the appraisal process. Perkins and Gauther have not challenged the Insurer's position that it has been actually prejudiced by their conduct. They instead argue that neither an insured's delayed invocation of the appraisal process nor an insurer's payment of an appraisal award bars their claims. But, the Insurer has never argued to the contrary. It has had no occasion to, because (a) it was the Insurer, not the insureds, who demanded appraisal; (b) the Insurer did so promptly; and (c) no appraisal award has been paid because the insureds' non-cooperation has prevented the appraisal from being completed.

As far as we can discern, Perkins and Gauther have attempted in their appellate brief to link their legal argument to the Insurer's actual summary-judgment grounds only by the incomplete sentence, "invoked appraisal on June 27, 2019 and then attempted to again have the appraisal process go forward on September 23, 2021," and by their citations to authorities that an insurer is not prejudiced from an insureds' delayed invocation of the appraisal process if the insurer could itself have invoked the appraisal process at an earlier date. But these facts, which are asserted for the first time on appeal, and the conclusion that Perkins and Gauther have drawn from them, are simply wrong.

Regarding the factual assertions, there is no evidence in the record that *anything* happened in this case on June 27, 2019, or September 23, 2021, nor do Perkins and Gauther purport to cite to any such evidence. And second, the Insurer *did* invoke the appraisal process earlier than June 27, 2019. Specifically, the Insurer made a written demand for appraisal and designated its own appraiser on October 8, 2018, just two weeks after Perkins's counsel sent the Insurer David Sienema's repair estimate.

As for their conclusions on the subject of prejudice, Perkins and Gauther argue that "a party cannot claim it has been prejudiced by an unreasonable delay when the policy gives both sides the same opportunity to demand appraisal, *because such party could have avoided prejudice by demanding an appraisal itself at an earlier stage in the proceedings*."[7] In support of this proposition, Perkins and Gauther cite *Alvarado v. State Farm Lloyds*, No. 7:14-CV-166, 2015 WL 12778684, at *4 (S.D. Tex. May 18, 2015), in which a defendant-insurer argued that the plaintiff-insured

---

[7] Emphasis added.

8

waived appraisal by failing to invoke the process until the case had been in litigation for nearly a year.

But, no one in this case has ever contended that appraisal was waived, and in any event, the facts here are the opposite of those in *Alvarado*. Here, the Insurer invoked the appraisal process just fourteen days after Perkins, through counsel, asserted that the estimated damages to the covered property were more than a hundred times greater than previously estimated. This was a timely invocation of the appraisal process. But, Perkins and Gauther refused to cooperate, and in May 2019, the Insurer obtained a court order requiring them to comply with the policy. Nevertheless, the insureds still did not submit themselves to EUOs for nearly two years and have not signed the transcripts as the Insurer requested and the policy requires. They never produced Henry Sienema for an EUO, and they de-designated him as their appraiser only after the Insurer moved for summary judgment due to Perkins's and Gauther's failure to fully comply with the trial court's order and the pertinent policy provisions.

*Alvarado* is distinguishable on another ground as well, as can be seen from the authoring court's explanation of its holding:

> [E]ven if State Farm could prove Plaintiff is invoking appraisal at an unreasonable point in the proceedings, the provision at issue provides both parties the opportunity to request appraisal, *and there is no indication that Plaintiff ever resisted or opposed a request for appraisal* by State Farm. Thus, State Farm cannot prove prejudice by an undue delay, since it had an opportunity to invoke the appraisal clause at an earlier stage.

*Id.* (emphasis added). The case illustrates that when either party can invoke the appraisal process, either of them can do so at an early date and thereby avoid prejudice from the other's delay in *invoking* the process. This is so because either party can start the appraisal process unilaterally simply by making a written demand.

9

But, completing the process is another matter, which requires both the insurer and the insured to comply with the policy's appraisal provisions. And here, the evidence conclusively establishes that, unlike the insured in *Alvarado*, Perkins and Gauther have resisted the appraisal process for years. Indeed, it is the Insurer's position that it has been prejudiced by Perkins's and Gauther's failure to cooperate and to comply with the policy provisions *despite* the Insurer's early invocation of the appraisal process.[8] Perkins and Gauther have not challenged that position on appeal.

Where, as here, appellants present as their sole appellate issue the broad question of whether the trial court erred in granting a motion for summary judgment, the appellants may argue all possible grounds on which summary judgment should have been denied. *Malooly Bros., Inc. v. Napier*, 461 S.W.2d 119, 121 (Tex. 1970). "[B]ut if a party does not brief those arguments to the court of appeals, the court of appeals cannot properly reverse summary judgment on those grounds." *Rosetta Res. Operating, LP v. Martin*, 645 S.W.3d 212, 227 (Tex. 2022). Because the trial court may have granted summary judgment on the ground that the Insurer was prejudiced by Perkins's and Gauther's failure to comply with their duty of cooperation as a condition precedent to coverage, and because Perkins and Gauther have not challenged the granting of summary judgment on that basis, we cannot conclude that the trial court erred in granting the motion. *See id.*; *Martinez v. ACCC Ins. Co.*, 343

---

[8] The other authorities on which Perkins and Gauther rely are similarly inapposite in that they neither concern nor are responsive to the grounds on which the Insurer sought summary judgment. *See Barbara Techs. Corp. v. State Farm Lloyds*, 589 S.W.3d 806, 829 (Tex. 2019) ("[N]either State Farm's invocation of the policy's appraisal process for resolution of a dispute as to the amount of loss, nor State Farm's payment based on the appraisal amount, exempts State Farm from [Texas Prompt Payment of Claims Act] damages as a matter of law."); *Ortiz v. State Farm Lloyds*, 589 S.W.3d 127, 135 (Tex. 2019) ("As we hold today in *Barbara Technologies*, an insurer's payment of an appraisal award does not as a matter of law bar an insured's claims under the Prompt Payment Act.").

10

S.W.3d 924, 930 (Tex. App.—Dallas 2011, no pet.) (affirming summary judgment where appellants "do not challenge the granting of summary judgment on the basis that [the insurer] was prejudiced by [the insured's] failure to satisfy the condition precedent to cooperate in the investigation, defense and settlement of the claims against her").

**IV.**

Because Perkins and Gauther have not negated every ground on which the trial court may have granted summary judgment, we overrule the sole issue presented and affirm the trial court's judgment.

/s/ Tracy Christopher
Chief Justice

Panel consists of Chief Justice Christopher and Justices Wise and Hassan.