# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-23-00234-CV

---

**Siller Preferred Services, LLC, Appellant**

**v.**

**Ana Piedra Bravo, Kevin Pereyra, and Bravo-Drewy Enterprises, LLC, Appellees**

---

### FROM THE 455TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-21-002061, THE HONORABLE MAYA GUERRA GAMBLE, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

Siller Preferred Services, LLC appeals the district court's order granting summary judgment on limitations grounds in favor of Siller's former employees, Ana Piedra Bravo and Kevin Pereyra. Siller contends that the discovery rule applied to its breach-of-contract and noncompete-violation claims and that a genuine issue of material fact exists as to when it actually discovered or had reason to suspect a breach. We will affirm the district court's order.

## BACKGROUND[1]

Siller is a Texas limited liability company that provides temporary staffing services. Christina Paz is Siller's President/CEO and sole manager. Bravo was Siller's branch manager, and Pereyra was Siller's account manager. Bravo and Pereyra signed identical

---

[1] The facts are taken from the parties' evidence submitted when litigating the summary-judgment motion.

employment agreements with Siller that included noncompete and nondisclosure provisions.[2]  In the noncompete, the employees agreed not to compete with Siller's labor-staffing business and not to engage in a directly competitive business during their employment and for one year after.[3]

Bravo resigned on September 30, 2016, and ceased working for Siller.  On October 6, 2016, she created and began working for her own labor-staffing company, Bravo-Drewy Enterprises, LLC, d/b/a B Select Services.  Bravo-Drewy's certificate of formation, publicly available from the Texas Secretary of State's office, identifies the company's purpose as "staffing services provided to businesses."  Pereyra resigned on October 7, 2016, but worked at Siller for two more weeks before starting work with Bravo-Drewy on October 23, 2016.

**Bravo mistakenly sends W-9 to her former email address at Siller**

Months later, Bravo mistakenly sent to her former Siller email an IRS form W-9 (relevant part below) for reporting the amount paid to Bravo-Drewy by Hotel Granduca Austin:

| Form **W-9**<br>(Rev. December 2014)<br>Department of the Treasury<br>Internal Revenue Service | **Request for Taxpayer**<br>**Identification Number and Certification** | Give Form to the<br>requester. Do not<br>send to the IRS. |
|---|---|---|

**1** Name (as shown on your income tax return). Name is required on this line; do not leave this line blank.

Bravo-Drewy Enterprises, LLC

**2** Business name/disregarded entity name, if different from above

B Select Services

**3** Check appropriate box for federal tax classification; check only **one** of the following seven boxes:

☐ Individual/sole proprietor or single-member LLC ☐ C Corporation ☐ S Corporation ☐ Partnership ☐ Trust/estate

☑ Limited liability company. Enter the tax classification (C=C corporation, S=S corporation, P=partnership) ▶ P

Note. For a single-member LLC that is disregarded, do not check LLC; check the appropriate box in the line above for the tax classification of the single-member owner.

☐ Other (see instructions) ▶

**4** Exemptions (codes apply only to certain entities, not individuals; see instructions on page 3):

Exempt payee code (if any) _____

Exemption from FATCA reporting code (if any) _____

(Applies to accounts maintained outside the U.S.)

**5** Address (number, street, and apt. or suite no.)

7901 Cameron Road, Building 3, Suite 208D

**6** City, state, and ZIP code

Austin, TX 78754

Requester's name and address (optional)

Hotel Granduca Austin
320 South Capital of Texas Hwy
Westlake Hills, TX 78746

**7** List account number(s) here (optional)

---

[2]  These are addressed in the "Covenant Not to Compete" and "Confidentiality" sections.

[3]  "Directly Competitive" is defined in the employment agreement as "providing laborers to businesses involved in the construction, restaurant, food service and hospitality industries."

**Paz forwards email with W-9 to herself on May 2, 2017**

On May 2, 2017, Paz received the email sent to Siller with the W-9 and forwarded it to herself:

| | |
|---|---|
| **From:** | Siller Payroll |
| **To:** | Christina Paz |
| **Subject:** | Fwd: Scan Mar 8, 2017, 3.54 PM |
| **Date:** | Tuesday, May 2, 2017 4:10:04 PM |
| **Attachments:** | Scan Mar 8, 2017, 3.54 PM.pdf |

Get Outlook for Android

**From:** Ana Piedra Bravo ███████████████████
**Sent:** Thursday, March 9, 2017 3:18:27 PM
**To:** Ana Bravo
**Subject:** Scan Mar 8, 2017, 3.54 PM

Created with Scanner Pro

Sent from my iPad

Siller contends that Bravo's accidental email was insufficient to provide Siller with notice or reason to be aware of a breach by Bravo and denies that there is any evidence showing that the email involved or related in any way to Pereyra.

**Cease-and desist letters sent to Bravo and Pereyra**

On May 10, 2017, soon after receiving Bravo's email and W-9, Paz called the law firm of Robles & Associates about the noncompete agreements. Attorney Lloyd Robles sent

nearly identical cease-and-desist letters to Bravo and Pereyra on May 15, 2017, at the address for Bravo-Drewy, alleging their violation of the noncompete and nondisclosure terms in their employment agreements:

> I am writing on behalf of Siller Preferred Services who has retained me to assist them in ceasing violations of their employment agreement by you. It has come to my client's attention that you have established a business that competes directly with Siller Preferred Services. Your Employment Agreement contains the following provisions which you are currently violating [quoting covenant not to compete and confidentiality paragraphs].

The letter expressly informed Bravo:

> It is apparent that you are violating this provision by establishing and operating a business which seeks to provide temporary workers to businesses in the immediate Austin Area. . . . [and] you have utilized information gathered during your employment with my client to help you establish your own staffing business in Austin and Dallas including using information about prospective clients with whom you have since contracted, specifically, Hotel Granduca Austin and the Austin Country Club. My client is also aware that you forwarded emails from its business server to your personal e-mail account which is also a violation of the confidentiality provision.

The letter expressly informed Pereyra:

> It is apparent that you are violating this [noncompete] provision by helping Ana Piedra Bravo establish and operate a business which seeks to provide temporary workers to businesses in the immediate Austin Area. . . [and] have utilized information gathered during your employment with my client to help you establish your own staffing businesses in Austin and Dallas including using information about prospective clients with whom you have since [had] Ana Piedra Bravo contract, specifically, Hotel Granduca Austin and the Austin Country Club.

Additionally, both letters stated Siller's intent to "initiate litigation by May 20th," seeking a temporary restraining order, permanent injunction, monetary damages, and attorney's fees,

4

unless the directly competing business was closed and Siller's client lists were returned. Neither Bravo nor Pereyra responded to the cease-and-desist letters. No litigation was filed against them by May 20.

On July 7, 2017, one of Siller's clients, Dell Diamond, told Paz that it had switched from Siller to Bravo-Drewy. Paz would later aver, in response to the summary-judgment motion, that she "was not aware of the existence of Bravo-Drewy" until this date. On July 27, 2017, a few weeks after Dell Diamond's disclosure, Paz sought assistance from Kaushik Rambhotla at the KR Law Firm. She emailed to him copies of Bravo's and Pereyra's nondisclosure agreements and noted their lack of response to the cease-and-desist letters:

> Need your help with this matter. We did send a letter. But they never responded[,] and we received an email from [Bravo] with [one] of our vendors (by accident) that they are using now. I need you[r] aggressive skills on these people.

More than three years later, on December 9, 2020, Paz emailed a third attorney, Ana Estrada, about this matter. Estrada requested copies of the cease-and-desist letters and referenced "3 relevant dates: Date of signing NDA[,] Date of last day at work[, and] Date of discovery of violation of NDA/Date of notice." Estrada said that she would "try to find out if we can move forward based on the date of 'discovery.'"

**Siller sues Bravo and Pereyra on May 5, 2021**

On May 5, 2021, a fourth attorney, Matthew Valley, filed Siller's suit against Bravo and Pereyra alleging their breach of the covenant not to compete, breach of contract,

misappropriation of trade secrets, and unjust enrichment.[4] Bravo and Siller answered and pleaded affirmative defenses, including that Siller's claims are barred by the applicable statutes of limitations. Siller later retained a fifth attorney, who filed an amended petition against Bravo and Pereyra alleging only breach of the covenant not to compete and breach of contract.

### Summary-judgment motion and evidence

Bravo and Pereyra filed a traditional summary-judgment motion contending that Siller's claims against them are barred by the four-year statute of limitations applicable to contracts. They also contended that the discovery rule does not apply because Siller's type of injury—a former employee's violation of noncompete and nondisclosure agreements by working for a competing business—was not "inherently undiscoverable" and, even if the rule could apply, it is negated by the summary-judgment evidence showing that Siller would have learned of such injury more than four years before filing suit if it had used reasonable diligence. Siller's summary-judgment response did not argue that its alleged type of injury is "inherently undiscoverable"; instead, Siller relied on the discovery rule—which it did not plead but referenced in an interrogatory answer—for its argument that a genuine issue of material fact existed as to when its causes of action accrued.[5]

---

[4] Siller also sued Bravo-Drewy, but those claims were dismissed in an agreed order signed March 11, 2022.

[5] Bravo and Pereyra informed the district court that they would proceed as though Siller pleaded the discovery rule; thus, the applicability of the discovery rule was tried by consent. *See Via Net v. TIG Ins. Co.*, 211 S.W.3d 310, 313 (Tex. 2006) (noting that when plaintiff asserted discovery rule for first time in its summary-judgment response, defendant had choice to object that discovery rule had not been pleaded or respond on merits and try that issue by consent).

The summary-judgment evidence included Bravo's and Pereyra's affidavits showing that they had both ceased working for Siller and were working for Bravo's directly competitive business, Bravo-Drewy, by October 23, 2016. As of that date, Bravo and Pereyra had breached the terms of their employment agreements, and Siller had the right to sue them. *See Via Net v. TIG Ins. Co.*, 211 S.W.3d 310, 314 (Tex. 2006) ("It is well-settled law that a breach of contract claim accrues when the contract is breached."). Thus, in the absence of the discovery rule, Bravo and Pereyra contend that Siller's suit for breach of contract and violation of the noncompete provision had to be filed within the four-year limitations period for contracts, meaning at the latest, by October 23, 2020. *See* Tex. Civ. Prac. & Rem. Code § 16.051 (four-year residual statute of limitations); *Stine v. Stewart*, 80 S.W.3d 586, 592 (Tex. 2002) ("A party asserting a breach of contract claim must sue no later than four years after the day the claim accrues.").

However, Bravo and Pereyra also had the burden to negate the discovery rule, if it applied. *See Gill v. Hill*, 688 S.W.3d 863, 868 (Tex. 2024) ("[T]o succeed on limitations at the summary-judgment stage, the movant 'must also conclusively negate application of the discovery rule and any tolling doctrines pleaded as an exception to limitations.'") (quoting *Draughon v. Johnson*, 631 S.W.3d 81, 85 (Tex. 2021)). Thus, they attached evidence showing that Siller's suit for breach of contract and violation of the noncompete is time-barred because if Siller had exercised reasonable diligence on May 2, 2017 (when it received Bravo's email and W-9), it would have discovered the facts giving rise to this type of contractual injury within the four-year limitations period, which even under the discovery rule would have been extended only

7

until May 3, 2021.[6] They assert that by waiting until May 5, 2021, to file suit, Siller's claims are time-barred.

Additional summary-judgment evidence included:

- a certified copy of Bravo-Drewy's October 6, 2016 certificate of formation, filed with the Texas Secretary of State's office, identifying the company's purpose as "staffing services provided to businesses";

- the email that Paz forwarded to herself on May 2, 2017, and the accompanying W-9 (copied above) that Bravo completed for Hotel Granduca Austin;

- Siller's answers to Bravo and Pereyra's interrogatories, including that:

  (1) "Plaintiff first suspected the breach on approximately May 8, 2017, when reviewing emails Ana Bravo sent to her old Siller email address. One of these emails included a W[-]9 sent to Hotel Granduca Austin. It [Siller] discovered the breach was occurring during a site visit to Dell Diamond in July 2017."

  (2) Robles and Associates was contacted about the noncompete agreements "by telephone around May 10, 2017."

  (3) "Plaintiff did not discover[] or have reason to suspect a breach was occurring until early May of 2017. As such, the statute of limitations is tolled by the discovery rule."

- Paz's verification for Siller's interrogatory answers, "stat[ing] under oath that the statements therein contained are true and correct";

- an email chain between Paz and attorneys Rambhotla and Estrada (summarized above), whom Paz contacted about the noncompete agreements on July 27, 2017, and December 9, 2020, respectively; and

- a certified copy of Siller's original petition—with the attached noncompete agreements Bravo and Pereyra signed and the cease-and-desist letters Robles sent to each of them—file-stamped on May 5, 2021.

---

[6] Under this theory, the May 2, 2021 limitations deadline would have fallen on a Sunday and would have been extended to Monday, May 3, 2021. *See* Tex. Civ. Prac. & Rem. Code § 16.072 ("If the last day of a limitations period under any statute of limitations falls on a Saturday, Sunday, or holiday, the period for filing suit is extended to include the next day that the county offices are open for business.").

Bravo and Pereyra averred that between October 6, 2016, and May 2, 2017, they were openly and regularly providing temporary labor services to various clients in Austin, Texas, on behalf of Bravo-Drewy, including services for businesses such as Hotel Granduca Austin that had previously hired Siller for temporary labor.[7] They also averred that "sometime in 2017" they each received a cease-and-desist letter from Siller threatening litigation by May 20 if Bravo did not close the business and Pereyra did not stop working there. Although they did not comply, Siller filed no litigation against them by the May 20 deadline. Lastly, Bravo and Pereyra each averred that Siller had their contact information but never contacted them between their resignations and receipt of the cease-and-desist letter, and neither Siller nor its attorneys contacted them between the date of the cease-and-desist letter and the date they were served with Siller's lawsuit in May 2021.

Siller's summary-judgment response acknowledged that it "suspected something when on May 2, 2017, Defendant Bravo sent an email to her old email address at [Siller] which included an IRS form W-9 sent to Hotel Granduca in Austin, Texas." The only summary-judgment evidence provided with Siller's response was Paz's affidavit[8] averring:

- she makes all substantive decisions for Siller;

- she received an accidental email from Bravo on May 2, 2017;

---

[7] Bravo attached to her affidavit Bravo-Drewy's invoices sent to UT Golf Club on October 20, 2016, and to Hotel Granduca Austin on February 13, 2017.

[8] Bravo and Pereyra state that during the summary-judgment hearing, they argued the "sham-affidavit rule," challenging Paz's affidavit for its conflict with her prior sworn statements. But there is no record of the hearing and no ruling on that challenge; thus, this matter is not preserved for review. *See Lee v. Galleria Loop Note Holder LLC*, No. 01-22-00160-CV, 2023 WL 5436434, at *8 (Tex. App.—Houston [1st Dist.] Aug. 24, 2023, no pet.) (mem. op.) ("Absent a timely objection and a ruling from the trial court on the objection [], a complaint that a summary-judgment affidavit is a sham is waived for purposes of appellate review."); *see also Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 84 (Tex. 2018) (trial court struck sham affidavit).

- the email was sent to Bravo's old email address at Siller;

- the email attached an IRS form W-9 directed to Hotel Granduca in Austin, Texas, which was not a client of Siller's "at the time";

- the email piqued her interest but did not raise her suspicion about Bravo competing with Siller;

- she found out about Bravo's and Pereyra's actual competition with Siller during a site visit to Dell Diamond;

- Dell Diamond informed her on July 7, 2017, that they were now Bravo-Drewy's client, and this is when she "actually knew and discovered the wrongful competition of Defendants";

- she does not regularly search public records, including the Secretary of State's records, to determine whether former Siller employees are competing with Siller; and

- she "was not aware of the existence of Bravo-Drewy Enterprises, LLC until at least July 7, 2017."

After the district court heard the parties' arguments, it signed an order granting summary judgment. Siller appeals.

## DISCUSSION

"The standard for reviewing a summary judgment under Texas Rule of Civil Procedure 166a(c) is whether the successful movant at the trial level carried its burden of showing that there is no genuine issue of material fact and that judgment should be granted as a matter of law."[9] *Gill*, 688 S.W.3d at 868 (quoting *Peat Marwick v. Harrison Cnty. Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999)). "A genuine issue of material fact exists if the

---

[9] Not every factual dispute precludes summary judgment. *Roper v. CitiMortgage, Inc.*, No. 03-11-00887-CV, 2013 WL 6465637, at *4 n.4 (Tex. App.—Austin Nov. 27, 2013, pet. denied) (mem. op.). A factual dispute precludes summary judgment only if the disputed issue is a "genuine" issue of material fact. *Id.* And a material fact issue is "genuine" only if a reasonable factfinder could resolve the fact issue in favor of the nonmovant. *Id.* When the evidence simply shows that some metaphysical doubt as to the fact exists, or when the evidence is not significantly probative, the material fact issue is not "genuine." *Id.*

10

evidence 'rises to a level that would enable reasonable and fair-minded people to differ in their conclusions.'" *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 220 (Tex. 2017) (quoting *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.3d 706, 711 (Tex. 1997)). No genuine issue of material fact is created if the evidence is "'so weak as to do no more than create a mere surmise or suspicion' that the fact exists." *Id.* (quoting *Kia Motors Corp. v. Ruiz*, 432 S.W.3d 865, 875 (Tex. 2014)). "Undisputed evidence may be conclusive of the absence of a material fact issue, but only if reasonable people could not differ in their conclusions as to that evidence." *Schlumberger Tech. Corp. v. Pasko*, 544 S.W.3d 830, 833 (Tex. 2018) (quoting *Buck v. Palmer*, 381 S.W.3d 525, 527 (Tex. 2012)). If the movant carries its summary-judgment burden, then the burden shifts to the nonmovant to raise a genuine issue of material fact precluding summary judgment. *Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 84 (Tex. 2018). We view the evidence in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable factfinders could and disregarding contrary evidence unless reasonable factfinders could not. *Zive v. Sandberg*, 644 S.W.3d 169, 173 (Tex. 2022).

"A defendant moving for summary judgment on the affirmative defense of limitations has the burden to conclusively establish that defense." *Gill*, 688 S.W.3d at 868 (quoting *Peat Marwick*, 988 S.W.2d at 748). To prevail on a limitations defense at the summary-judgment stage, the movant "must also conclusively negate application of the discovery rule and any tolling doctrines pleaded as an exception to limitations." *Id.* (quoting *Draughon*, 631 S.W.3d at 85). This requires that the defendant conclusively prove when the cause of action accrued and negate the discovery rule—if it applies and has been pleaded or otherwise raised—by showing as a matter of law that there is no genuine issue of material fact about when the plaintiff discovered, or in the exercise of reasonable diligence should have discovered, the nature

11

of its injury. *Peat Marwick*, 988 S.W.2d at 748. We review de novo whether a defendant met its burden of conclusively establishing a limitations defense. *Draughon*, 631 S.W.3d at 88.

**Statute of limitations and discovery-rule exception**

As we have noted, the limitations period applicable to breach-of-contract claims is four years. *See* Tex. Civ. Prac. & Rem. Code § 16.051; *Stine*, 80 S.W.3d at 592. The four-year limitations period also applies to the subset of contractual claims for breach of a covenant not to compete. *See* Tex. Civ. Prac. & Rem. Code § 16.051; *see also* Michol O'Connor, O'Connor's Texas Causes of Action ch. 5-I, § 4 (2025) ("Because a covenant not to compete is a contractual agreement, the limitations period for breach of a covenant not to compete is the same as for breach of contract—four years.").[10] "Generally, a claim accrues when the defendant's wrongful conduct causes the claimant to suffer a legal injury. . .[,] 'even if the fact of injury is not discovered until later, and even if all resulting damages have not yet occurred.'" *Marcus & Millichap Real Est. Inv. Servs. of Nev., Inc. v. Triex Tex. Holdings, LLC*, 659 S.W.3d 456, 461 (Tex. 2023) (internal citation omitted) (quoting *S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex. 1996)). Additionally, although Siller pleaded two separate causes of action, breach of contract and breach of a covenant not to compete, "under the single-action rule, a defendant's wrongful conduct gives rise to a single, indivisible action in which the claimant must pursue all claims for all damages resulting from all injuries that arise from the wrongful conduct, and those claims all accrue when the first such injury occurs." *Regency Field Servs., LLC v. Swift Energy Operating,*

---

[10] "No case has addressed the issue of limitations relating to a covenant not to compete because most suits are filed immediately after the employee begins to compete." Michol O'Connor, O'Connor's Texas Causes of Action ch. 5-I, § 4 (2025).

12

*LLC*, 622 S.W.3d 807, 815 (Tex. 2021). Thus, the date that Siller's claims accrue is the same for both its pleaded causes of action. *See id.*

"The discovery rule is a 'narrow exception' to the legal-injury rule that 'defers accrual of a cause of action until the plaintiff knew or, exercising reasonable diligence, should have known of the facts giving rise to the cause of action.'" *Marcus & Millichap Real Est. Inv. Servs.*, 659 S.W.3d at 461 (quoting *Berry v. Berry*, 646 S.W.3d 516, 524 (Tex. 2022)). The discovery rule "applies when the injury is by its nature inherently undiscoverable," meaning that "it is by nature unlikely to be discovered within the prescribed limitations period despite due diligence." *Id.* (quoting *Agar Corp., Inc. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136, 146 (Tex. 2019), and *Berry*, 646 S.W.3d at 524, respectively). "[D]etermination of whether an injury is inherently undiscoverable is made on a categorical basis rather than on the facts of the individual case." *Id.* (quoting *Archer v. Tregellas*, 566 S.W.3d 281, 290 (Tex. 2018)). The question is whether the injury is "the type of injury that could be discovered through the exercise of reasonable diligence." *Id.* (quoting *BP Am. Prod. Co. v. Marshall*, 342 S.W.3d 59, 66 (Tex. 2011)).

The Texas Supreme Court has "restricted the discovery rule to exceptional cases to avoid defeating the purposes behind the limitations statutes." *Via Net*, 211 S.W.3d at 313. And while it has declined to hold that the discovery rule can never apply to breach-of-contract claims, it has stated that "those cases should be rare, as diligent contracting parties should generally discover any breach during the relatively long four-year limitations period provided for such claims." *Id.* at 314-15. Because contracting parties are generally not fiduciaries, due diligence requires that each protect its own interests. *Id.* at 314.

13

Due diligence "may include asking a contract partner for information needed to verify contractual performance." *Id.* "If a contracting party responds to such a request with false information, accrual may be delayed for fraudulent concealment." *Id.* "But failing to even ask for such information is not due diligence." *Id.* Discovery-rule inquiries usually involve fact questions; however, "commencement of the limitations period may be determined as a matter of law if reasonable minds could not differ about the conclusion to be drawn from the facts in the record." *Childs v. Haussecker*, 974 S.W.2d 31, 44 (Tex. 1998); *United Healthcare Servs. v. First St. Hosp. LP*, 570 S.W.3d 323, 337 (Tex. App.—Houston [1st Dist.] 2018, pet. denied) (same). Thus, in some circumstances, courts may determine as a matter of law that reasonable diligence would have uncovered the wrong within the statutory period. *Hooks v. Samson Lone Star, Ltd. P'ship*, 457 S.W.3d 52, 58 (Tex. 2015).

**Siller's claims were not "inherently undiscoverable" and are time-barred as matter of law**

Siller's appellate issue contends that "there is a genuine issue of material fact because [it] did not actually discover or have reason to suspect a breach of contract until July 2017."[11] But as Bravo and Pereyra correctly note, Siller does not argue that its alleged type of injury is "inherently undiscoverable." Instead, Siller skips that threshold inquiry and contends that it did not actually discover or have reason to suspect a breach of contract until July 7, 2017—when Dell Diamond disclosed to Paz that it had switched from Siller to Bravo-Drewy—

---

[11] Siller briefed this as a single issue with three subparts, arguing (1) the facts were insufficient for Siller to exercise due diligence; (2) Siller did not actually know or was not put on notice of its damages until after the May 2, 2017 email was sent; and (3) Siller did not actually know of Bravo's breach until July 2017, nor was there evidence of Pereyra's breach. Because all these subparts concern the applicability of the discovery rule, we address them collectively here.

14

which Siller says started the limitations period and made its May 5, 2021 suit against Bravo and Pereyra timely. We disagree.

The discovery rule is inapplicable to Siller's claims as a matter of law because the nature of its injury is not inherently undiscoverable. *Marcus & Millichap Real Est. Inv. Servs.*, 659 S.W.3d at 461 (stating that discovery rule "applies when the injury is by its nature inherently undiscoverable," meaning that "it is by nature unlikely to be discovered within the prescribed limitations period despite due diligence"). Rather, Siller's claims against Bravo and Pereyra for breach of contract and violation of a noncompete agreement involve "the type of injury that could be discovered through the exercise of reasonable diligence." *See id.* "A plaintiff's lack of diligence can defeat application of the discovery rule." *United Healthcare Servs.*, 570 S.W.3d at 336 (noting that courts use varying terminology to express and apply discovery rule, including "reasonable diligence," "constructive notice," and "inquiry notice"). And a plaintiff's assertion about when it received actual knowledge "is not determinative if [it] did not act reasonably and, 'in effect, closed [its] eyes to evident and objective facts concerning accrual of [its] right to sue." *See DeWolf v. Kohler*, 452 S.W.3d 373, 391 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (quoting *Garza v. U.S. Bureau of Prisons*, 284 F.3d 930, 935 (8th Cir. 2002)).

The summary-judgment evidence shows that Siller—acting through Paz[12]—was on inquiry notice of this type of contractual injury when it received Bravo's email with the IRS

---

[12] An amendment to Siller's certificate of formation, attached to its amended petition, shows that Paz is its sole manager. Siller does not dispute that in this role, her knowledge of the email and W-9 is imputed to Siller. *See Los Compadres Pescadores, L.L.C. v. Valdez*, 622 S.W.3d 771, 787 (Tex. 2021) (noting that corporation is bound by knowledge of its agent if such knowledge came to agent in course of employment); *accord Scionti v. First Tr. Corp.*, No. CIV.A. H-95-5493, 1999 WL 35134588, at *32 (S.D. Tex. June 24, 1999) (mem. op. & order) ("[T]he rule that knowledge of an agent is imputed to the principal applies to the limitations issue.").

form W-9 that identified Bravo's self-named company, **Bravo**-Drewy, and Hotel Granduca Austin, which was not a client of Siller's "at the time" but was previously.[13]  Even if the discovery rule applied, "it would delay accrual of the claim only during the time it would take for a reasonably diligent plaintiff to investigate and discover the cause of the injury."  *Id.*  By exercising reasonable diligence on May 2, 2017 (when it received Bravo's email and W-9), Siller could have discovered this type of contractual injury well before May 3, 2021, the date that the four-year limitations period would end if the discovery rule applied to extend it.  *See Marcus & Millichap Real Est. Inv. Servs.*, 659 S.W.3d at 461 (inquiry in determining whether injury is inherently undiscoverable is whether it is "the type of injury that could be discovered through the exercise of reasonable diligence").  Siller's denial that the May 2, 2017 email "possess[ed] sufficient fact[s]" to put Siller on inquiry notice is contrary to the detailed recitations in cease-and-desist letters sent soon afterward to both Bravo and Pereyra—at the address for Bravo Drewy—their new place of employment.

Eight days after receiving and forwarding Bravo's email and W-9, Paz consulted Robles and Associates on behalf of Siller.  Robles sent cease-and-desist letters to Bravo and Pereyra at Bravo-Drewy, alleging that they had breached their employment agreements with Siller.  Robles's letter to Bravo specified that she had (1) established a business that competes directly with Siller Preferred Services, (2) violated the noncompete by establishing and operating a business that seeks to provide temporary workers to businesses in the immediate Austin area, (3) utilized information gathered during her employment with Siller to help establish her own

---

[13]  Paz's email to Rambhotla references receipt of "an email from [Bravo] with [one] of our vendors (by accident) that they are using now."  This reference is consistent with Bravo's and Pereyra's affidavits stating that Hotel Granduca Austin had previously hired Siller for temporary labor.

staffing business in Austin and Dallas (including using information about prospective clients with whom she had since contracted, specifically, Hotel Granduca Austin and the Austin Country Club), and (4) forwarded emails from Siller's business server to her personal e-mail account in violation of the confidentiality provision. Similarly, Robles's letter to Pereyra specified that he had (1) violated the noncompete by helping Bravo establish and operate a business that seeks to provide temporary workers to businesses in the immediate Austin area, and (2) utilized information gathered during his employment with Siller (including using information about prospective clients with whom Bravo had since contracted, specifically, Hotel Granduca Austin and the Austin Country Club).

Despite its knowledge of these facts, Siller never made any inquiries to Bravo or Pereyra about their employment situations or whether they were honoring their noncompete and confidentiality obligations after their resignations. *Cf. Via Net*, 211 S.W.3d at 314 (noting that due diligence "may include asking a contract partner for information needed to verify contractual performance" and that "failing to even ask for such information is not due diligence").[14]

Nothing in the summary-judgment evidence shows that Siller (or Paz) learned any additional information about Bravo's and Pereyra's contractual breaches between May 2, 2017, when it received Bravo's email, and May 10, 2017, when Siller called Robles about the

---

[14] While Siller protests that conducting a public-records search "for every single person Siller lets go" would be impractical, it does not explain why performing that search for two former employees would have been less practical than retaining an attorney to send cease-and-desist letters to them at their new place of employment. Moreover, reasonable diligence requires that sophisticated parties in a business transaction acquaint themselves with readily accessible, publicly available records. *United Healthcare Servs. v. First St. Hosp. LP*, 570 S.W.3d 323, 336 (Tex. App.—Houston [1st Dist.] 2018, pet. denied).

17

noncompete agreements and "commissioned" the cease-and desist letters.[15]   Having enough information to cause one to engage counsel indicates the inquiry-notice standard has been met. *See United Healthcare Servs.*, 570 S.W.3d at 340-41 (concluding that United Healthcare's claims were time-barred and noting that just six months after United Healthcare downloaded another insurer's complaint in lawsuit, which alleged that insurer was defrauded by First Hospital into paying fees to entities not entitled to receive them, United Healthcare hired counsel to inquire into First Hospital's relationship with various freestanding emergency centers); *DeWolf*, 452 S.W.3d at 392 (concluding that discovery rule did not prevent limitations bar because, among other things, plaintiff knew enough "to protect her interests by hiring counsel" in same year as underlying event and before investigation was complete); *see also Hooks*, 457 S.W.3d at 58 (courts may determine as matter of law that reasonable diligence would have uncovered wrong within statutory period).  Therefore, we conclude that the type of injury at issue here was not inherently undiscoverable because it was discoverable through the exercise of reasonable diligence, especially after Siller was put on inquiry notice of the injury by Paz's receipt of Bravo's email and W-9.

Further, Siller's assertions that the limitations period was tolled under the discovery rule until Siller had actual knowledge of its contractual injury on July 7, 2017 (when Dell Diamond disclosed that it had switched to Bravo-Drewy), and that it "was not aware of the

---

[15]   The summary-judgment evidence shows Siller had enough information by May 10, 2017, (within the four-year limitations period ending on October 23, 2020), to retain counsel and commission the cease-and-desist letter sent to Pereyra at Bravo-Drewy's address, alleging that he had "violated the noncompete by helping Bravo establish and operate a business which seeks to provide temporary workers to businesses in the immediate Austin Area."  The specific information in this letter, which Siller does not address, negates its arguments that there are "no facts to suggest that [it] knew Perey[r]a was working for Bravo" in July 2017 when Siller discovered Bravo's breach and that there is "no evidence as to when Siller knew or discovered Pereyra was in violation of his covenant not to compete."

18

existence of Bravo-Drewy" until that date would require Siller to have effectively closed its eyes to the evident and objective facts in the summary-judgment evidence concerning accrual of its right to sue. *See DeWolf*, 452 S.W.3d at 391; *see also Dortch v. Boxer Prop. Mgmt. Corp.*, No. 01-17-00148-CV, 2018 WL 3431733, at *5 (Tex. App.—Houston [1st Dist.] July 17, 2018, no pet.) (mem. op.) (declining to apply discovery rule where record showed that if plaintiff acted with due diligence, he would likely have discovered his alleged injury within four-year limitations period for his breach-of-contract and promissory-estoppel claims). That evidence included detailed employment-agreement violations alleged in the cease-and-desist letters sent to Bravo and Pereyra—at their new place of employment, Bravo-Drewy—by Siller's attorney, whom Paz contacted just eight days after discovering Bravo's email:

- It has come to my client's attention that you have established a business that competes directly with Siller Preferred Services;

- It is apparent that you are violating this provision by establishing and operating a business which seeks to provide temporary workers to businesses in the immediate Austin Area;

- It is apparent that you have utilized information gathered during your employment with my client to help you establish your own staffing business in Austin and Dallas including using information about prospective clients with whom you have since contracted, specifically, Hotel Granduca Austin and the Austin Country Club;

- My client is also aware that you forwarded emails from its business server to your personal e-mail account which is also a violation of the confidentiality provision;

- It is apparent that you are violating this provision by helping Ana Piedra Bravo establish and operate a business which seeks to provide temporary workers to businesses in the immediate Austin Area;

- It is apparent that you have utilized information gathered during your employment with my client to help you establish your own staffing businesses in Austin and Dallas including using information about prospective clients with whom you have since [had] Ana Piedra Bravo contract, specifically, Hotel Granduca Austin and the Austin Country Club.

19

Reasonable people could not differ in their conclusions as to this undisputed evidence, *see Schlumberger Tech. Corp.*, 544 S.W.3d at 833, and reasonable factfinders could not disregard it, *see Zive*, 644 S.W.3d at 173.

Finally, it is immaterial that Siller did not actually know of a pecuniary loss or the exact cause of its injury until July 2017 because a claim accrues when a defendant's wrongful conduct causes the claimant to suffer a legal injury, even if the fact of injury is not discovered until later, and even if all the resulting damages have not yet occurred. *See Marcus & Millichap Real Est. Inv. Servs.*, 659 S.W.3d at 461. As we have similarly stated, "[a] plaintiff need not know the full extent of the injury before limitations begin to run." *Haule v. Travis County*, No. 03-19-00250-CV, 2020 WL 2786943, at *2 (Tex. App.—Austin May 28, 2020, no pet.) (mem. op.) (citing *Town of Dish v. Atmos Energy Corp.*, 519 S.W.3d 605, 613 (Tex. 2017) (concluding that evidence showed plaintiffs were on "inquiry notice" of their air-contamination claims before date of report on which they relied as accrual date); *Gonzales v. Southwest Olshan Found. Repair Co.*, 400 S.W.3d 52, 58 (Tex. 2013) ("[O]nce a claimant learns of a wrongful injury, the statute of limitations begins to run even if the claimant does not yet know the specific cause of the injury; the party responsible for it; the full extent of it; or the chances of avoiding it.")).

Assuming without deciding that the discovery rule could apply to claims for breach of contract or violation of a covenant not to compete, we conclude that Bravo and Pereyra established as a matter of law that Siller's claims for the type of contractual injury alleged were not "inherently undiscoverable" and are time-barred. The summary-judgment evidence conclusively established that Siller's claims for the type of contractual injury alleged accrued on October 6, 2016 (against Bravo), and October 23, 2016 (against Pereyra), when each former

20

employee began violating their noncompete and nondisclosure agreements by starting work for Siller's direct competitor, Bravo-Drewy.

Without application of the discovery rule, the four-year limitations period expired, at the latest, on October 23, 2020. Even if the discovery rule applied and started the limitations period on May 2, 2017 (when Paz received the email and W-9 sent to Siller that she forwarded to herself), the extended four-year limitations period would have expired on May 3, 2021. Applying the discovery rule and starting the limitations period on July 7, 2017 (when Dell Diamond disclosed its switch from Siller to Bravo-Drewy), as Siller suggests, would improperly overlook the "evident and objective facts concerning accrual of [its] right to sue" presented in the summary-judgment evidence. *See DeWolf*, 452 S.W.3d at 391.

Siller's suit for breach of the covenant not to compete and breach of contract, filed on May 5, 2021, is barred by the statute of limitations. *See* Tex. Civ. Prac. & Rem. Code § 16.051. We overrule Siller's issue.

## CONCLUSION

We affirm the district court's order granting summary judgment.

_____

Darlene Byrne, Chief Justice

Before Chief Justice Byrne, Justices Triana and Crump

Affirmed

Filed: February 28, 2025

21